Carolyn **BRADLEY** et al.

v.

**SCHOOL BOARD OF the CITY OF RICH- MOND, VIRGINIA**, et al.

**Civ. A. No. 3353.**

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 8, 1971.

Norman J. Chachkin, New York City, Louis R. Lucas, Memphis, Tenn., M. Ralph Page, James R. Olphin, Richmond, Va., for plaintiffs.

George B. Little, John H. O'Brion, Jr., James K. Cluverius, Richmond, Va., for defendants Superintendent of Schools and School Board of the City of Richmond.

Andrew P. Miller, Atty. Gen. of Virginia, William G. Broaddus and D. Patrick Lacy, Jr., Asst. Attys. Gen., for defendants State Board of Education and Superintendent of Public Instruction.

Robert D. McIlwaine, III, Petersburg, Va., J. Mercer White, Jr., County Atty., for Henrico County, L. Paul Byrne, Richmond, Va., for defendants School Board and Board of Supervisors of Henrico County.

J. Segar Gravatt, Blackstone, Va., for defendant School Board of Chesterfield County.

Oliver D. Rudy, Commonwealth's Atty. for Chesterfield County, Frederick T. Gray, Walter E. Rogers, Richmond, Va., for Board of Supervisors of Chesterfield County.

Everette G. Allen, Jr., Richmond, Va., for intervenors Bellevue-Ginter Area Civic Ass'n, Robert Douglas Bain and Sherwood Park Civic Ass'n.

Frederick T. Gray, Walter E. Rogers, Richmond, Va., for intervenors Noel Austin and others.

John S. Battle, Jr., William H. King, Jr., Richmond, Va., for intervenors Westover Hills Parent-Teachers Ass'n.

MERHIGE, District Judge.

Certain of the parties defendant in this school desegregation case, to-wit: School Board of Chesterfield County, School Board of Henrico County, and the Boards of Supervisors of the respective counties and each and every member thereof, have

by their respective counsel filed a joint motion that the presiding judge disqualify himself from any further participation in this long-standing litigation so long as they, or any of them, remain party defendants herein.

The motion was filed on January 4, 1971, along with affidavits from the respective members of the school boards and boards of supervisors, as well as a certificate of their respective counsel representing that the affidavits were made in good faith.

Although the motion was not properly filed pursuant to the local rules in that same fails to contain a list of authorities upon which the movants rely, and although there may be a serious technical question as to the timeliness of the motion, the Court is inclined to waive the failure of the parties to conform to the requirements aforementioned as to authorities and consider said motion.

The Court, through its law clerks, contacted at least one attorney for each of the respective boards suggesting that the Court would consider any authorities they wished to submit and requesting that same be done forthwith. As of the time the Court was doing its own research in this matter, only one of the counsel had submitted any authorities, and that by telephonic communication, and even now at the Bar of the Court no other authorities have been tendered.

There are two statutes governing disqualification of a United States District Judge. It would appear that the motion and the respective affidavits, all of which incidentally are identical in phraseology, were intended to comply with Title 28, Section 144, of the United States Code. Title 28, Section 144, reads as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

At least two of the counsel, at the Bar of the Court this morning, state that they did not intend their motion to be one pursuant to Title 28, Section 144; but if this be so, why the effort to conform to Section 144 in the filing of the affidavits and the certificate of counsel?

Regardless of these representations, the Court treats the matter as a motion filed under Title 28, Section 144, U.S.C., and on the assumption that these litigants are proceeding under this statute, which requires mandatory disqualification, it is appropriate that the Court address itself thereto. Before doing so, however, it would perhaps be appropriate for the Court to review very briefly the authorities submitted by counsel telephonically.

Interestingly enough, while counsel have just now at the Bar disclaimed any intention to utilize statutory provisions concerning disqualification, most of the cases cited, with slight exception, went to statutory disqualifications.

The first case cited was Rapp v. Van Dusen, 350 F.2d 806 (3d Cir. 1965), a Third Circuit case involving petitions for writs of mandamus or prohibition or both in a suit arising from an airplane crash in Boston harbor. The petitioners were seeking to cause the district court to vacate certain orders entered in the case. As a result of the petition filed with the circuit court, the appellate court ordered the district judge to file an answer and subsequently directed the dis-

trict judge to vacate his original order. The respondents, including the judge, obtained certiorari and the United States Supreme Court reversed the Third Circuit and the matter was remanded to the district court, whereupon the plaintiffs moved that the trial judge disqualify himself under Title 28 U.S.C. Section 455. He refused to do so and mandamus was instituted. The facts and the record show that the trial judge had employed as his counsel attorneys for one of the parties in his court. In short, the trial judge had designated the defendant's attorney as his own attorney and the circuit court held that Section 455 was a bar to the judge's further participation in the case. As a matter of fact, even in that case there were several dissents. I will discuss Section 455 subsequently.

United States v. Amerine, 411 F.2d 1130 (6th Cir. 1969); this was a criminal mail theft case. The trial judge had been the United States Attorney at the time of the original criminal complaint. The circuit court held that he had been "of counsel", and the statute plainly says that the judge shall disqualify himself if he had been of counsel. Under Section 455 no motion need even be made since the legislative mandate is clear.

In re Murchison has been cited, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), a case in which the petitioners complained of a situation in which the state judge under Michigan law served as a one man grand jury and subsequently, after a hearing in open court, found them, in essence, guilty of perjury for statements allegedly made during the secret hearings. The United States Supreme Court held, in essence, that the trial judge had become part of the accusatory process.

Texaco, Inc. v. Chandler, 354 F.2d 655 (10th Cir. 1965), cert. denied 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966), has been cited—another Section 455 case in which the circuit court held the judge was directed to proceed no further in a case pending in his court. The judge had refused to disqualify himself although he stated he did not intend to try the case. The judge had been a defendant in a ten million dollar law suit and one of the attorneys in the suit in which he was asked to disqualify himself had acted as counsel for the judge in his own suit. The Tenth Circuit held that that connection was sufficient to come within the meaning of Section 455.

United States v. Quattrone, 149 F. Supp. 240 (D.D.C.1957), is a case with which I am in full accord. The court sua sponte disqualified itself from ruling upon certain motions in a criminal case and from presiding over the trial. The court in that case had a motion under advisement and while considering the motion the court was visited in chambers by an unnamed visitor not associated with the case and this individual requested certain information. As Judge Youngdahl said, "The discussion of the case was the sole subject of conversation during the visit." The court said that in view of the appearance of impropriety, and in view of the minimal inconvenience resulting by assignment of another judge to the case, and in view of the rigid standards governing the administration of criminal justice, the court felt it should voluntarily disqualify itself. I am in full accord with that position, but I fail to find it controlling in the instant matter before the Court.

I believe, in addition, Knapp v. Kinsey, 232 F.2d 458 (6th Cir. 1956), was also cited. My notes on the *Knapp* case are not readily available, but I will refer to it in a few moments.

█ The case law is generally well settled to the effect that the truth of the alleged factual allegations contained in the affidavits is not subject to inquiry. The presiding judge, however, has the task of determining as a matter of law first whether a moving party's affidavit is timely filed, whether same makes the requisite allegations as required by the statute, and whether such allegations provide fair factual support for the "belief that bias or prejudice exists," Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). In short, while a

judge may not pass on the truth of the alleged facts, he must decide whether the affidavit meets the procedural requirements laid down in the statute and whether, as just stated, the facts alleged give fair support to the charge of bias or prejudice.

■ It should be borne in mind that while the factual allegations of an affidavit are not questioned for purposes of Section 144 determination, this does not mean that there is a presumption that they are either accurate or true.

The affidavits were filed on January 4, 1971, some 30 days after movants were added as parties defendant in this case. This is in spite of the fact that the matter about which they apparently base their affidavits occurred on July 6, 1970. While, of course, they had no standing until December 5, 1970, to make their instant motion, it is of some significance that a fair reading of their respective affidavits is that the information upon which they base their affidavits was known to them for many months prior to the filing of their affidavits, and hence there should have been little delay in the filing of any such motion after acquiring standing to file such motion. Most of the affidavits were executed several days prior to the actual filing.

In Faubus v. United States, 254 F.2d 797 (8th Cir. 1958), Governor Faubus filed an affidavit of prejudice against the presiding judge nine days after the Governor had been made a party defendant to a school desegregation suit. The Court held in that case that the affidavit was not timely, nor did they find any facts stated in the affidavit which justified "the Governor in waiting until the day before the hearing to file it." Although it is to be noted that unlike the instant affidavits, the affidavit in the *Faubus* case made reference to his failure to file it sooner by reason of the fact that he had not been a party to the suit for sufficient time to comply literally with the statute. In addition, his affidavit stated that he filed it as soon "as the facts of the bias and prejudice of

Judge Davies became known to him." The Court pointed out that the reasons given by the affiant in that case for his conclusions were all based on evidence, occurrences and proceedings which took place and were well known prior to the time the affiant was made a party to the suit. The Court held that there was undue delay in the filing.

The purpose, of course, of a time requirement as provided in Section 144 is to establish an essential procedural safeguard by impeding the use of Section 144 as a delaying tactic.

There has escaped the Court, in its hurried research, any case showing good cause for the failure to promptly file such an affidavit other than wherein the affiant shows a late discovery of the alleged facts. See Chessman v. Teets, 239 F.2d 205 (9th Cir. 1956).

The instant affiants could not, of course, literally comply with the statute in that they could not file "in less than ten days before the beginning of the term, etc."

■ At the very least, the affidavit must be filed with reasonable diligence. See Bommarito v. United States, 61 F. 2d 355 (8th Cir. 1932); Chafin v. United States, 5 F.2d 592 (4th Cir.) cert. den. 269 U.S. 552, 46 S.Ct. 18, 70 L.Ed. 407 (1925). In Eisler v. United States, 83 U.S.App.D.C. 315, 170 F.2d 273 (1948), the Court held that an affidavit filed nine days after the affiant first learned the identity of the trial judge was untimely. This Circuit, as early as 1925 in *Chafin, supra,* has held that without regard to statutory requirements, the challenge to a judge of bias and prejudice must be made at the first opportunity after discovery of the facts alleged to tend to prove disqualification.

The matter, if at all possible, however, ought not to be decided on the failure of a timely filing of the affidavit. The foregoing is set out by the Court primarily as an example of the strictness with which the requirements of Section 144 have been interpreted by the appellate courts.

Getting to the affidavits themselves, they recite that "on July 6, 1970, the Honorable Robert R. Merhige, Jr. wrote a letter to Messrs. M. Ralph Page and James R. Olphin, counsel for the plaintiffs in the above styled case, in which he suggested that 'it might be appropriate for the defendant school board to discuss with the appropriate officers of the contiguous counties as to the feasibility or possibility of consolidation of school districts.'" The record in this case shows that the aforementioned letter, a copy of which went to all counsel of record, and a copy of which was filed with the papers in these proceedings, has not been accurately quoted. The Court, however, for purposes of this motion, accepts affiants' version as true.

The affidavits, in addition, allege that on July 23, 1970, the School Board of the City of Richmond filed a third party complaint addressed to the school boards of the two counties and asking consolidation, and that on November 4, 1970, the same party filed a motion under Rule 19 seeking joinder of the movants as well as certain officials with state-wide powers. It should be noted that the affidavits state that the motion filed on July 23rd was filed "apparently acting upon the suggestion contained in the aforesaid letter of July 6, 1970."

So that the record will be concise, the letter to which I have referred and a typical affidavit will be attached to these conclusions when transcribed.

Affiants state that on or about December 7, 1970, the Court granted the joinder motion and further that on or about December 14, 1970, plaintiffs filed an amended complaint in which they asked the Court to "enter its order requiring all defendants, jointly and severally, to take all necessary action to require forthwith the consolidation or merger of the defendant school systems in all aspects of school operation and administration." Affiants further state that the suggestion contained in the Court's letter of July 6, 1970, was given widespread publicity in the news media, both national and local, and that articles

have appeared stating that the joinder motion was filed "on Judge Merhige's suggestion" and that the presiding judge will be called on to rule upon his own suggestion.

Allegedly these views are widely held by the public, and the respective affiants state that the letter has been construed as "an invitation" to the original parties to take steps leading to a consolidated school district. These views are asserted to be held both by the press and by the public. Each affiant states in conclusion that on these facts, he or she believes that the presiding judge "cannot impartially decide issues raised by the pleadings filed in this case upon his own suggestion;" and further, that he or she, as well as a majority of the people in the respective communities, share this belief.

The question presented is whether the sworn facts provide a reasonable basis for a belief that the presiding judge either holds, as required by Title 28, Section 144, a personal bias or prejudice either against one of the parties or in favor of another of the parties. In addition, the Court deems it appropriate to determine whether the sworn facts provide a reasonable basis for a prejudgment by the Court of a particular set of facts relevant to the litigation. The thrust of the claim as contained in the affidavits is that there is a belief that the motions filed and the steps taken by the plaintiffs and the City School Board with an eye to consolidation of school divisions were taken at the invitation or suggestion of the Court. This is the factual support offered for the claim that the presiding judge "cannot impartially decide" issues raised by these pleadings.

Assuming arguendo that, read generously, such amounts to a claim of bias or prejudice, the Court must look to see if the affidavits state the specific facts which support the allegations of bias and prejudice. Obviously a degree of specificity is necessary to show that any such professed feeling of bias is grounded in reason. The facts alleged must give "fair support" to the charge. See *Berger, supra.* The bias or prejudice which

will disqualify a judge must be a personal bias or prejudice as distinguished from a judicial one. It must be a bias which is extra-judicial in nature. See Knapp v. Kinsey, *supra*, 232 F.2d 466 (6th Cir. 1956). Nor is it sufficient that the alleged bias or prejudice arises from the judge's view of the law, which may have been expressed by him. Language to the effect that certain steps and litigation were taken by a party at the Court's suggestion is ambiguous. Indeed, the Courts often have a duty to raise matters sua sponte when evidence indicates that equity and justice require a law suit to take a particular turn. See, e. g., Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Courts have a duty in certain instances to question witnesses and on occasion to call impartial experts to testify as witnesses for the court. Normally these steps would not be construed as an indication of bias or prejudice on the part of the presiding judge for the reason that they are usually taken on the basis of information gained by the judge in the courtroom where it is the judge's duty to form opinions. See Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949). Here, generously construed, the claim is that the presiding judge made a suggestion as to a particular course of conduct by a litigant which reflected a prejudgment as to the desirability or effectiveness of a particular means to achieve a unitary school system prior to an adjudication of the merits of a particular proposal.

A generous reading of the language of the affidavits' quotation from the July 6th letter concerning discussions "with the appropriate officials of the contiguous counties as to the feasibility or possibility of consolidation" cannot, however, find therein support for any prejudgment as to the factual basis of any duty or liability on the part of the county officials.

Trial and appellate courts in school desegregation litigation often make suggestions by way of a wide inventory of techniques of the manner in which a unitary system may be achieved. See Brown v. Board of Education of Topeka, 349 U.S. 294, 300–301, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Green v. County School Board of New Kent County, 391 U.S. 430, 439–442, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Swann v. Charlotte-Mecklenburg Board of Education, 431 F.2d 138, 147 (4th Cir. 1970). In one noteworthy case the suggestion, indeed the direction, was made by the court that the defendant school board prepare its plan of operation with an eye to possible cooperation with school districts in the metropolitan suburbs for purposes of accomplishing integrated schools. Hobson v. Hansen, 269 F.Supp. 401 (D.D.C.1967). That judge, however, specifically disavowed any consideration of the legal duty of surrounding areas to enter into a metropolitan area; as here, he merely stated that the then current defendants might attempt to fulfill their obligation by initiating negotiations. *Id.*, 510–511.

 Prejudgment as to the facts giving rise to liability or reason to believe such exists, if fairly supported, would, in the Court's view, satisfy Section 144. Prejudgment as to the law, of course, is manifestly insufficient by reason of the fact that every judge presumably knows his legal premises before the evidence comes in, and if he is in error the remedy is by appeal. Indeed, even if a judge thinks a party's legal position is weak or in error, this would not in any way impede a judge's ability to conduct a fair trial.

Here, however, the affiants point to no statement of the presiding judge which in any way characterizes their conduct or that of others which might give rise to a liability on their part. Nor do they show any statements indicating that the judge has formed an opinion on their liability, from which one might infer that he has arrived at factual conclusions. The most that can be read in the allegations relating to any action by the court is an action taken during the course of the trial proceedings. They do not allege any surreptitious communication

with one party to the exclusion of another.

■ If the affiants have met the statutory standards, then the judge must recuse himself even if the allegations are known by the judge to be false. On the other hand, if the statutory requirements are not met there is a duty on the judge to refuse to disqualify himself. See Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761 (1967); Simmons v. United States, 302 F.2d 71 (3d Cir. 1962).

The Supreme Court of the United States has construed Title 28, Section 144, to establish that "the alleged bias or prejudice, to be disqualifying, must stem from an extra-judicial source and result in an opinion on the merits or some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

■ While the Court is satisfied, and is of the opinion by reason of the apparent attempt by the movants through their counsel to conform to the procedural requirements of Title 28, Section 144, by filing their affidavits and a certificate of counsel of record stating that said affidavits were made in good faith, the Court should rule on the applicability of Section 144, and so does, and finds that the motion in this regard should be denied. There is, however, another legislative act which the Court ought to consider before ruling on the instant motion insofar as that legislative act may bear on the matter. We must look at the mandate of Title 28, Section 455, which reads as follows:

> Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

This section clearly requires a judge to disqualify himself under certain conditions.

The Court has attempted to interpret the pending motion and accompanying papers in such a matter as to determine if the Court should be disqualified under that section. No one has suggested any interests by the Court in this case as contemplated by that statute; nor has the Court been of counsel or related to or connected with any party or his attorney in such a manner as to require the Court's disqualification. No counsel at Bar has suggested that the Court should disqualify itself pursuant to that section.

At least one of counsel has indicated primary reliance on the *Quattrone* case, which I have mentioned, which was not a statutory disqualification case.

Nevertheless, without regard to the statutory disqualifications heretofore referred to, the Court has given consideration to the suggestion contained in the motion and affidavits that as a consequence of the alleged actions of the news media and the public reaction to the suggestion contained in the Court's letter, irreparable harm will be done to the judicial system of the United States if the presiding judge sits in judgment on any aspect of the case involving these defendants.

The concern of the moving parties, as expressed in their motion, must in the Court's opinion be examined in light of the actual facts. In considering this aspect and endeavoring to reach a conclusion consistent with a judge's obligation to the judicial system of the United States and the interests of justice, and having concluded that the affidavits are not sufficient as a matter of law for the invocation of statutory disqualification, it is appropriate for the Court to examine the record in the light of the actual facts as distinguished from the Court's burden to have examined the affidavits heretofore mentioned as if same were factually accurate.

The Court has no doubt that the residents of the respective subdivisions have

great interest in the instant case; nor can it be doubted from the affidavits and the statements contained in the motion that the contents of the Court's communication of July 6, 1970, were given widespread publicity in the news media. It would be hoped that in any such widespread dissemination of the news that the contents of the Court's communication were considered as written, and not out of context.

One might fairly, in examining the respective affidavits, reach a conclusion that a private communication was addressed to counsel for one of the parties. The record contradicts this.

Any construction by the press or the people as an invitation by the Court that the plaintiffs take steps to join the school boards and supervisors of the respective counties, as well as the State Board of Education, is not only an erroneous one but is refuted in whole by the record.

If the record did not reflect that the new defendants waited until almost the last date for the filing of answers to the amended complaint, which even now haven't been filed, to file their motion to recuse, and if in the preparation of the affidavits attached thereto, which were manifestly prepared by counsel, more care had been taken to the end that, for example, the statement contained in paragraph 2 of the respective affidavits purporting to be a direct quotation of the Court's communication of July 6th, which, contrary to the innuendo contained in the affidavits, went to all counsel, had not been taken out of context, the Court might have some difficulty in regard to the propriety of this judge presiding in the action. If the affidavits, which have been filed are ones which counsel are presumed to have known would have to be read by the Court as required by law under Section 144 as if they were completely accurate and factual, had contained the fact known to at least one of counsel, for he participated in the proceedings, that that portion of the Court's letter of July 6th, a three page communication incidentally, in which the Court

stated, "It may be that it would be appropriate for the defendant school board to discuss with the appropriate officers of the contiguous counties as to the feasibility or possibility of consolidation of school districts, all of which may tend to assist them in their obligation. They may well determine to look into the prospects of a 'feeder' system, consolidation, pairing, zoning, etc.", was one facet of the case which emanated from the evidence introduced by one of the Richmond School Board's expert educators some time prior to the Court's letter of July 6th, then the Court would perhaps be more impressed with the motion.

The record shows that in at least two hearings prior to the Court's letter of July 6th the expert testimony was to the effect that the way to achieve an optimum of desegregation in the Richmond area would involve "the involvement of a larger area than the present city boundaries of the City of Richmond—Henrico County, Chesterfield County, and the possibility of the general metropolitan area may be bordering on other counties other than Henrico and Chesterfield. Basically, the problem could be solved within the City of Richmond, Henrico and Chesterfield Counties." One week prior thereto the same witness testified that the School Board had located all the newer high schools as near the city boundaries as was humanly possible in anticipation that some time in the future annexation would take place and the senior high schools could be desegregated. The witness' testimony was generally to the effect that transportation was considered in the placing of high schools.

(Here the Court read excerpts from Dr. Little's testimony of June 19, 1970 and June 25, 1970.)

It follows, therefore, that the Court's communication, which was precipitated by a motion by the plaintiffs, was, as to certainly that portion of the communication to which movants referred, precipitated by the evidence in the Court.

Views of a judge are acquired from evidence, and as to matters involving fac-

tual issues they are acquired solely from the evidence introduced in open court.

While the Court does not deem it necessary for purposes of this motion to specifically set out the sources referred to by the Court in the composition of the Court's communication of July 6th, said communication was made pursuant to the Court's obligation as enunciated by innumerable courts of appeal, including the United States Supreme Court.

Any suggestion by counsel that this Court has reached any prejudgment either on the factual issues remaining or on the legal liability of the movants, is erroneous and is a disservice to their clients and the Court.

The Court specifically spelled out in its communication of July 6th that there were still "many practical problems left open, as heretofore stated, including to what extent school districts and zones may or must be altered as a constitutional matter. * * * ", a phrase used by the Chief Justice in Northcross v. Board of Education of Memphis, 397 U.S. 232, 237, 90 S.Ct. 891, 25 L.Ed.2d 246 (1970).

I am satisfied that if one would take the communication of July 6th, there could be pointed out appellate authority for the statements contained literally in about every paragraph.

This Court views its obligation to assist the litigants in this case in any appropriate manner to the end that the law is conformed to. If this be grounds for disqualification, I must respectfully suggest that an appellate court will have to make the pronouncement.

It would appear appropriate, in addition, to view the motion as suggested in paragraph 10 of the motion and the affidavits, to the effect that regardless of the propriety of the Court's actions, by reason of the news media's actions in the manner in which they publicised and allegedly interpreted the Court's letter of July 6, 1970, that they, in some manner, have created an erroneous impression in the minds of the reading public. The Court's reply, of necessity, must be that the news media have a right to report what they consider to be news. They have a right, guaranteed under the First Amendment to the Constitution, to be complimentary or critical of a court. They have a right to make their own interpretations. I have been cited to no authority which requires that news media be temperate or objective or fair or unbiased. One would hope that they would be all of these things. But regardless of whether they are or are not, courts would cease to operate if by reason of treatment of news by those who have a right to treat it, the rights of the public and litigants are affected to such an extent as to permit the manner of treatment of news to control the courts. Theirs is undoubtedly one of the privileges accorded under the First Amendment.

The best that can be said in regard to this facet of the case is that affiants, by reason of their interpretation of the news media's interpretation, were less than an impartial tribunal.

■■ Standing alone, a party's statement that he fears a tribunal may not be impartial is not adequate:

> * * * [T]he feelings of defendants which, of necessity, must be subjective, cannot without more be made the test. To be sure there are circumstances in which a judge may wish to recuse himself although a legally sufficient affidavit of bias and prejudice could not be presented against him. But whether such considerations make it wise to withdraw must be left to the informed discretion of the individual trial judge. Wolfson v. Palmieri, 396 F.2d 121, 125 (2d Cir. 1968).

When a recusal motion lacks the statutorily required support, a judge must still give it due consideration. For any such motion, if presented in good faith, indicates a fear on a party's part that his trial may be conducted without full regard for his rights and interests.

■ But there are strong countervailing considerations which must affect a judge's decision. A judge has a duty to

decide whatever cases come before him to the best of his ability. 28 U.S.C. § 453. There is an obligation not to disqualify one's self, therefore, solely by reason of the personal burdens related to the task. The duty is the more compelling when a single judge has acquired by experience familiarity with a protracted, complex case, which could not easily be passed on to a second judge:

> There is "as much an obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is," In re Union Leader Corp., 292 F.2d 381, 391 (1 Cir.), cert. den. 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); see also, Tucker v. Kerner, 186 F.2d 79, 85 (7 Cir. 1950)—an obligation especially strong in a case like the present when the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience. Rosen v. Sugarman, 357 F.2d 794 (2d Cir. 1966).

Reference has been made in the motion to the Court's discontinuing the reading of letters addressed to the Court and to the Court's discontinuance of the reading of local newspapers. I think the record shows, I am satisfied, as is known to all counsel who have appeared before this Court in cases which tend to create general public interest, and particularly in school desegregation cases, that the Court has affirmatively avoided, where possible, the reading of newspaper interpretations of either evidence or rulings of the Court. The Court's refusal to read gratuitous letters concerning particular litigation is one which has not been precipitated by this action, but a practice invoked by the Court from the first day I had the honor of presiding as a Judge.

Gentlemen, I have concluded that I am required to deny the motion.

By order of the Court, the testimony of Dr. Little is attached as "Appendix A"; a typical affidavit is attached as "Appendix B"; the Court's letter of July 6, 1970, is attached as "Appendix C"; and a copy of the motion is attached as "Appendix D."

## APPENDIX A

### TESTIMONY OF DR. LITTLE
June 19, 1970

THE WITNESS: Your Honor, if I may, on the high school level, say this: you will note that all of the high schools in the old city of Richmond with the exception of Maggie Walker or all the newer high schools in the city of Richmond have been located as near the city boundary as was humanly possible to get them as far away from the core of the central city as humanly possible.

That was in anticipation that some time in the future annexation would take place and we then could desegregate, if you will, the senior high schools.

### TESTIMONY OF DR. LITTLE
June 25, 1970

THE COURT: Dr. Little, assuming transportation of pupils, is there any way to achieve what you consider to be, as an educator, an optimum of desegregation in the Richmond area?

DR. LITTLE: In the Richmond area, yes.

THE COURT: How would you do that?

DR. LITTLE: It would involve the involvement of a larger area than the present city boundaries of the city of Richmond.

THE COURT: Are you talking about Henrico County, Chesterfield County or both?

DR. LITTLE: Henrico County, Chesterfield County, and the possibility of the general metropolitan area, maybe bordering on, in other counties other than Henrico and Chesterfield. Basically the problem could be solved within the city of Richmond, Henrico and Chesterfield Counties.

## APPENDIX B

## AFFIDAVIT

STATE OF VIRGINIA
COUNTY OF CHESTERFIELD

J. RUFFIN APPERSON, being duly sworn, deposes and says:

1. That he is a member of the Board of Supervisors of Chesterfield County and, as such, is a defendant in the above entitled case.

2. That, to the best of his knowledge and belief, on July 6, 1970, the Honorable Robert R. Merhige, Jr., wrote a letter to Messrs. M. Ralph Page and James R. Olphin, counsel for plaintiffs in the above styled case, in which he suggested that it "might be appropriate for the defendant school board to discuss with the appropriate officers of the contiguous counties as to the feasibility or possibility of consolidation of school districts."

3. That on or about July 23, 1970, the School Board of the City of Richmond, apparently acting upon the suggestion contained in the aforesaid letter of July 6, 1970, filed a third party complaint asking that the School Boards of Chesterfield and Henrico Counties be made party defendants. The School Board's complaint sought the consolidation of the school divisions of the City of Richmond and the Counties of Chesterfield and Henrico. Subsequently, this complaint was withdrawn.

4. That on or about November 4, 1970, the School Board of the City of Richmond filed a motion to compel the joinder of the members of the State Board of Education, the Superintendent of Public Instruction, the members of the School Boards of Chesterfield and Henrico Counties and the members of the Boards of Supervisors of Chesterfield and Henrico Counties as parties defendant in this case.

5. That on or about December 7, 1970, this Court granted the aforesaid motion and ordered the members of the State Board of Education, the Superintendent of Public Instruction, the members of the School Board and Board of Supervisors of Henrico County, and the members of the School Board and Board of Supervisors of Chesterfield County be joined as parties defendant in this case.

6. That on or about December 14, 1970, plaintiffs filed an amended complaint in which they asked this Court to "enter its Order requiring all defendants, jointly and severally, to take all necessary action to require forthwith the consolidation or merger of the defendant school systems in all aspects of school operation and administration."

7. That the suggestion contained in Judge Merhige's letter of July 6, 1970, referred to above, was given widespread publicity in the news media.

8. That this case has been the subject of widespread public interest in the City of Richmond and, since the release of the letter of July 6, 1970, widespread public interest in Chesterfield and Henrico Counties.

9. That in said publicity concerning Judge Merhige's letter of July 6, 1970, both the national and local press have written articles stating (i) that the School Board of the City of Richmond acted on Judge Merhige's suggestion when it filed its motions to compel joinder of these defendants and (ii) that Judge Merhige will be called upon to rule upon his own suggestion.

10. That the views expressed in such articles are widely held by the citizens of Chesterfield and Henrico Counties, as well as by citizens of other political subdivisions of the Commonwealth, as indicated by letters to the editors of local newspapers.

11. That the letter of Judge Merhige dated July 6, 1970, has thus been construed by the press and by the people of Chesterfield County as an invitation by the Court that the School Board of the City of Richmond and the plaintiffs take the necessary steps to join the School Boards and Boards of Supervisors of Chesterfield and Henrico Counties and the State Board of Education and the Superintendent of Public Instruction to the end that the school divisions of the

aforesaid two counties be consolidated into a single school district with the City of Richmond.

12. The undersigned member of the Board of Supervisors of Chesterfield County states under oath that, upon the facts above set forth, he has reason to believe that Judge Merhige cannot impartially decide issues raised by pleadings filed in this case upon his own suggestion; and, based upon communications had with citizens of the county in line with his official duty, further believes that a majority of the people of said county share this belief.

13. That the undersigned member of the Board of Supervisors of Chesterfield County states under oath that he believes the said Judge Merhige should not sit to decide the legal and factual questions raised by pleadings which, in the undersigned's view, were filed upon the suggestion of Judge Merhige.

(s) J. Ruffin Apperson

APPENDIX C

UNITED STATES DISTRICT COURT

Eastern District of Virginia
Richmond, Virginia 23219
July 6, 1970

Chambers of
ROBERT R. MERHIGE, Jr.
District Judge

M. Ralph Page, Esquire
420 North 1st Street
Richmond, Virginia 23219

James R. Olphin, Esquire
214 East Clay Street
Richmond, Virginia 23219

Re: Carolyn Bradley and Michael Bradley, etc., et al. v. The School Board of the City of Richmond, Virginia, et al. Civil Action No. 3353

Gentlemen:

Your motion filed July 2, 1970, in re the above styled matter, has been brought to the attention of the Court, and unless I am requested to do otherwise by counsel for the defendants, no action will be taken on this motion until the defendants have been given an opportunity to be heard thereon.

It may be appropriate, however, for the Court to suggest to all counsel that heretofore in cases of this nature it has been the Court's practice to request counsel to attempt to come to a understanding in reference to fees prior to the Court taking any action thereon. In any event, it would appear that if the parties cannot agree in reference to that issue, a ruling on same ought not to be had until after a plan has been approved.

It also occurs to the Court to suggest that it ought to be unnecessary for the Court to enter any order as suggested by Paragraph 2 of your motion, for I am satisfied that counsel have advised their clients of the law as enunciated by the Court of Appeals of this Circuit as well as by the United States Supreme Court in the *Alexander* case, to the effect that there can be no further delay in the establishment of a unitary school system. It would appear inappropriate, in any event, for the Court to direct the manner in which the defendants are to comply with the constitutional requirements.

I am sure that all counsel are aware of the fact that this Court has not to date prepared any plan of desegregation, and does not intend to do so in this instance. That burden rests upon the school board. Obviously if the school board cannot file a plan which is constitutionally viable, and another plan has been filed by either the plaintiffs or intervenors which is constitutionally viable, the Court has little choice but to approve that which is required under the law.

Paragraph 3 of your pending motion suggests that the Court enter certain orders directing the defendants, in essence, in the manner in which they are to approach the immediate problem. I do not think this is necessary, although it is certainly appropriate for the Court to make suggestions.

It appears to me that the Court's findings from the bench were sufficient to suggest to all counsel, and to the defendants in particular, that they explore all reason-

able means to the end that their proposed plan conforms to the requirements of law. I know of no stronger language than that stated by the United States Supreme Court in the *New Kent* case, wherein the Court stated that the burden is upon the school board to take "whatever steps are necessary."

I am sure all parties recognize that the burden upon the school board in the submission of any plan is such that any plan which cannot be shown to be one which furthers conversion to a unitary, non-racial, non-discriminatory system must be held inacceptable.

The Court, of its own knowledge, recognizes that we are rapidly approaching a state-wide system of school districts which conform to the requirements of law.

I am hopeful and confident that the defendants are exploring every reasonable method to reach the ultimate goal. I am sure all recognize that the manner in which desegregation is to be achieved is subordinate to the effectiveness of any particular method or methods of achieving it. It is obvious that the United States Supreme Court tests the plans by their effectiveness.

This Court is not so insulated as not to be cognizant of some of the problems the school board is facing, including perhaps community opposition. As the Court stated from the bench, as traumatic as it may be, it must be done. No opposition can serve to prevent vindication of constitutional rights.

I am sure that all counsel are appreciative of the fact that the Court stands ready to assist in any manner consistent with its obligations, to the end that a plan constitutionally acceptable is formulated.

I feel confident that the defendants will utilize any assistance they may deem appropriate, including help from the Health, Education and Welfare and the State Board of Education.

It may be that it would be appropriate for the defendant school board to discuss with the appropriate officers of the contiguous counties as to the feasibility or possibility of consolidation of school districts, all of which may tend to assist them in their obligation. They may well determine to look at the prospects of a "feeder" system, consolidation, pairing, zoning, etc.

In spite of the guidelines afforded by our Circuit Court of Appeals and the United States Supreme Court, there are still many practical problems left open, as heretofore stated, including to what extent school districts and zones may or must be altered as a constitutional matter. A study of the cases shows almost limitless facets of study engaged in by the various school authorities throughout the country in attempting to achieve the necessary results. I have the utmost confidence and hope that the instant defendants will study all reasonable methods prior to their submission of a plan.

This letter is not to be construed as a formal ruling in any manner whatsoever on your pending motion. I realize there are cases in which the Courts have granted the interim relief requested by you in your motion; cases by which this Court may well be bound. You may be assured that every consideration will be given to your motion at such time as the Court deems it appropriate.

I felt, however, that this might be an appropriate time for the Court, consistent with its obligations, to weigh the ultimate suggestions in light of any alternatives which may appear as feasible and more promising in effectiveness, to remind all parties that the Court did not intend its statements from the bench to be limiting in any manner whatsoever as to the methods to be studied by the defendant school board.

It may be appropriate at this time to advise all counsel that there has been at least one informal motion for leave to file a brief *amicus curiae*, and since the Court cannot at this time conceive of any reason why any additional intervenors would be permitted, I likewise can see no reason why the Court should not be most liberal in granting permission

to file briefs *amicus curiae* and an order so stating will be this day entered.

Thanking you, I am

Very truly yours

(s) Robert R. Merhige, Jr.,
Robert R. Merhige, Jr.
United States District Judge

cc: All counsel of record

## APPENDIX D

### MOTION TO RECUSE

Now come the School Board of Chesterfield County, the School Board of Henrico County, the Board of Supervisors of Chesterfield County and the Board of Supervisors of Henrico County, and each and every member thereof, by counsel, and file this their joint motion that The Honorable Robert R. Merhige, Jr., Judge of the Court, recuse himself and refrain from any further participation in this case so long as they, or any of them, remain parties defendant herein, and, in support of such motion, respectfully represent unto the Court the following:

1. On July 6, 1970, The Honorable Robert R. Merhige, Jr., Presiding Judge, wrote a letter to counsel for the plaintiffs herein, with copies to counsel of record, in which he suggested that it might "be appropriate for the defendant school board to discuss with the appropriate officers of the contiguous counties as to the feasibility or possibility of consolidation of school districts. * * *"

2. The suggestion contained in the letter of July 6, 1970, was given widespread publicity in the news media and generated intense public interest in, and opposition to, any consolidation of the school divisions of Chesterfield and Henrico Counties. See, Exhibits 1a and 1b.

3. This case had been the subject of unprecedented public interest in the City of Richmond even prior to the writing of said letter to such an extent that Judge Merhige had stated that he had deemed it advisable to discontinue reading letters addressed to the Court and also to discontinue reading the local newspapers.

4. On July 23, 1970, the School Board of the City of Richmond filed a third party complaint asking that the school boards of Chesterfield and Henrico Counties be made parties defendant. This complaint sought the consolidation of the school divisions of the City of Richmond and of the Counties of Chesterfield and Henrico into a single school division. The filing of this complaint following closely as it did the widespread publicity of the letter of July 6, 1970, has been construed by the news media and the public as having been inspired by the letter of July 6, 1970. See, Exhibits 2a–2s. This third party complaint was subsequently withdrawn.

5. On November 4, 1970, the School Board of the City of Richmond filed a "Motion to Compel Joinder of Parties Needed for Just Adjudication Under Rule 19." The object of the motion was to bring into the case as defendants, for the purpose of effectuating the above mentioned consolidation, the members of the State Board of Education, the Superintendent of Public Instruction, the members of the School Boards of Chesterfield and Henrico Counties and the members of the Boards of Supervisors of Chesterfield and Henrico Counties.

6. On or about December 7, 1970, Judge Merhige granted the motion and ordered the joinder, as defendants, of all of the parties which the School Board of the City of Richmond had sought to make defendants.

7. On December 14, 1970, the plaintiffs filed an amended complaint in which they asked this Court to "enter its Order requiring all defendants, jointly and severally, to take all necessary action to require forthwith the consolidation or merger of the defendant school systems in all aspects of school operation and administration. * * *"

8. As evidenced by affidavits of the members of the Boards of Supervisors of Chesterfield and Henrico Counties and the School Boards of Chesterfield and Henrico Counties, attached hereto as Exhibits 3a–3v, the public officials made parties defendant by the action of the

Court are of opinion, from the facts set forth above, that Judge Robert R. Merhige, Jr. should not sit to decide the legal and factual questions raised by the pleadings which, in their view, were filed as a result of the suggestion made by Judge Merhige.

9. The aforesaid affidavits further reveal that, in the opinion of the public officials of Chesterfield and Henrico Counties who were joined as parties defendant herein, a majority of the people in their respective counties share their belief.

10. Regardless of the propriety of the action of Judge Merhige in making the suggestion of July 6, 1970, in view of the nature of this case which could vitally affect all of the citizens of Chesterfield and Henrico Counties, the publicity which has attended the letter of July 6, 1970 and the public reaction to the suggestion contained in the letter, irreparable harm will be done the judicial system of the United States if Judge Robert R. Merhige, Jr. sits in judgment on any aspect of this case which involves these defendants. In the minds of the public and these defendants, this case, insofar as it involves these defendants and the people they represent, is a direct result of the suggestion of Judge Merhige, and they believe that he cannot impartially pass upon his own suggestion.

Wherefore, the undersigned defendants respectfully move that The Honorable Robert R. Merhige, Jr. recuse himself and refrain from any further participation in this case so long as they, or any of them, remain parties defendant herein.

THE BOARD OF SUPERVISORS OF CHESTERFIELD COUNTY

By: (s) Frederick T. Gray
Special Counsel

Frederick T. Gray
510 United Virginia Bank Building
Richmond, Virgina 23219

By: (s) Oliver D. Rudy
Commonwealth Attorney of
Chesterfield County

Oliver D. Rudy
Commonwealth Attorney of Chesterfield County
Chesterfield, Virginia 23832

THE SCHOOL BOARD OF CHESTERFIELD COUNTY

By: (s) J. Segar Gravatt
Counsel

J. Segar Gravatt
105 East Elm Street
Blackstone, Virginia 23824

THE BOARD OF SUPERVISORS AND THE SCHOOL BOARD OF HENRICO COUNTY

By: (s) R. D. McIlwaine, III
Special Counsel

R. D. McIlwaine, III
P. O. Box 705
Petersburg, Virginia 23803

By: (s) J. Mercer White, Jr.
County Attorney for Henrico County

J. Mercer White, Jr.
County Attorney for Henrico County
P. O. Box 27032
Richmond, Virginia

## CERTIFICATE

I hereby certify that on this 4th day of January, 1971, a copy of the foregoing Motion to Recuse was mailed by United States mail, first-class postage, prepaid, to the following counsel of record in this action:

Jack Greenberg, Esq.
10 Columbus Circle
New York, New York 10019

Louis R. Lucas, Esq.
525 Commerce Title Building
Memphis, Tennessee 38103

James M. Nabrit, III, Esq.
10 Columbus Circle
New York, New York 10019

James R. Olphin, Esq.
214 East Clay Street
Richmond, Virginia 23219

Norman J. Chachkin, Esq.
10 Columbus Circle
New York, New York 10019

M. Ralph Page, Esq.
420 North First Street
Richmond, Virginia 23219

John S. Battle, Jr., Esq.
1400 Ross Building
Richmond, Virginia 23219

Conard B. Mattox, Jr., Esq.
City Attorney
402 City Hall
Richmond, Virginia 23219

Hon. Andrew P. Miller
Attorney General of Virginia
Supreme Court Building
Richmond, Virginia 23219

Everette G. Allen, Jr., Esq.
2nd Floor Massey Building
4th and Main Streets
Richmond, Virginia 23219

Edward S. Hirschler, Esq.
2nd Floor, Massey Building
4th and Main Streets
Richmond, Virginia 23219

J. Edward Lawler, Esq.
615 Mutual Building
Richmond, Virginia 23219

George B. Little, Esq.
1510 Ross Building
Richmond, Virginia 23219

(s) Frederick T. Gray