**LITTLE ROCK SCHOOL DISTRICT, et al., Appellants,**

v.

**ARKANSAS STATE BOARD OF EDUCATION, et al., Appellees.**

Nos. 89–2288, 89–2289, 89–2352, 89–2353, 90–1165, 90–1166, 90–1167, 90–1579 and 90–1580.

United States Court of Appeals, Eighth Circuit.

April 25, 1990.

ARNOLD, Circuit Judge.

The question for decision is whether I should disqualify myself from participating in these appeals. No party has asked me to do so, but certain facts raised the question in my own mind, and I placed these facts on the record at a hearing held in chambers on April 20, 1990.

As one aspect of a comprehensive desegregation plan, the District Court has ordered the Pulaski County Special School District (PCSSD) to buy a certain tract of land, on which an interdistrict magnet school would be constructed. The owner of the land is FilmTrust of Arkansas, which is either a corporation or a limited partnership. Among the principals of FilmTrust are Nathan and Pamela Kohn, who are personal friends of mine. The desegregation plan as a whole is under attack on this appeal, and PCSSD has, in particular, moved that the land-purchase requirement be stayed pending the outcome of the ap-

peal. We granted such a stay provisionally on April 13, 1990, and the purpose of the April 20 hearing was to determine whether to dissolve or modify the stay. Thus, the Kohns appear to have a personal financial stake in the outcome of the appeal and of the pending stay matter.

At the time of the April 20 hearing, I was inclined to withdraw from the case, but stated that I would reflect on the matter and make a definite decision within a few days. I have now made that decision.

The question is governed by statute. If the financial interest were my own, disqualification would be automatic. 28 U.S.C. § 455(b)(4) (personal financial interest of judge, spouse, or minor child residing in the judge's household requires disqualification). But the interest belongs to others, so the more general language of 28 U.S.C. § 455(a) applies:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Section 455(b), relating to a judge's own interests, is stricter. Disqualification under that subsection may not be waived, but a judge may accept a waiver of any ground for disqualification under Section 455(a) after "a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). See *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859–60 n. 8, 108 S.Ct. 2194, 2202 n. 8, 100 L.Ed.2d 855 (1988).

Until 1974, the standard for disqualification in cases such as this—involving no personal interest on the judge's part—was subjective. A judge had to withdraw from a case when "in his opinion" it would be improper to sit. 28 U.S.C. § 455 (1970 ed.). The statute now contains an objective standard—in effect, whether a reasonable neutral observer with knowledge of all the facts of record would question the judge's impartiality. The amendment to the statute also removed the concept of a "duty to sit," which had been accepted law under the old statute. See H.R.Rep. No. 93–1453, p. 5 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 6351, 6355.

A reasonable neutral observer who knows that my friends have a financial interest in the subject-matter of the case, and who knows nothing else, might well question my impartiality. Other facts, however, bear on the issue:

1. The record does not show, and I do not know, the extent of the Kohns' financial interest. They are not the only owners of FilmTrust. I do not know the proportion of their ownership, nor the nature of their agreement with the other owners, either with respect to the affairs of the business generally, or with respect to the division of the proceeds of a sale of the land. I have had no contact with any principal of FilmTrust about the matter. The Kohns no longer live in Arkansas.

2. The record does not show, and I do not know, whether FilmTrust has any equity in the property. The National Bank of Arkansas has a mortgage in the principal sum of $500,000, and the contract sale price is $990,000, but $100,000 is fixed in the contract as a real-estate commission, and there may be other liens on the land.

3. A foreclosure proceeding is now pending with respect to the land. It may soon result in a decree extinguishing, at least as a practical matter, any interest that FilmTrust might have in the contract for sale to PCSSD.

4. The contract for sale appears to have expired by its own terms. It was made subject to the approval of the PCSSD Board within 90 days of January 15, 1990. The 90th day was April 15, 1990, a Sunday. I assume the time was therefore extended until April 16, 1990. That date has passed, and the PCSSD Board did not approve the purchase.

5. PCSSD could still buy the site later, if this Court affirms the order being appealed, or even, perhaps, acquire it by condemnation, see Ark.Code Ann. § 6–13–103 (1987), but there is no way of knowing whether FilmTrust will still own the site at that time.

6. At the beginning of the hearing in chambers on April 20, I placed on the record the facts as I then knew them with

respect to the land. (The additional facts stated in this order came to light at the hearing.) I told counsel I did not expect them to react at that time to the prospect of my possible disqualification. I told them they were not required to react at any time. I did not ask them to waive any disqualification.[1] Nevertheless, counsel for PCSSD, the North Little Rock School District, the Joshua intervenors, and the Hart movants all expressed the hope that I would stay in the case. Counsel for the Little Rock School District,[2] the Arkansas State Board of Education, and the Knight intervenors expressed no view, but neither did they take a position on the land sale itself.

7. The land sale is only one issue among a multitude that the appeals present. Many other consequences, affecting many other people and the public interest in quality desegregated education, depend on the outcome of these cases. I have sat on panels hearing appeals in the Pulaski County school-desegregation case since 1982. No other judge of our Court, with the exception of the other two members of the current panel, has had comparable experience.[3]

8. On April 20, after the hearing in chambers, a letter dated April 18, 1990, from a realtor to one of the principals of FilmTrust, came to my attention. A copy of the letter had been sent to me by certified mail and was received in my office on April 19. I was not aware of the letter until after the hearing on April 20. A copy of the letter is being lodged with the Clerk of this Court, and he is directed to send a copy of it to counsel for each of the parties. (Counsel for the Hart movants is shown as receiving a copy on the letter itself.) It is improper for non-parties to communicate with the Court or any member thereof with respect to a pending case. It is improper for parties so to communicate without notice to all other parties. The purpose of the letter is obviously to preserve whatever right to a commission the writer of the letter may have. I assume that the writer of the letter did not know that it was improper to send me a copy. He is admonished not to communicate with the court in this manner again.[4]

Against this background, would it be reasonable for someone to question my impartiality? What is "reasonable" (the word used in the statute) is hardly capable of a logical demonstration with which everyone must agree. The question is one of degree. Prior cases are unlikely to be controlling. The profusion of possible fact patterns is too great. I have found one very recent opinion, though, which provides an interesting comparison. It is *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1567–69 (Fed.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). There, the losing party moved to set aside the judgment on the ground that the district judge's son was an employee of the winning company. The losing company

---

1. See *In re National Union Fire Ins. Co.*, 839 F.2d 1226, 1231 (7th Cir.1988): "The best practice is to disclose the details that the judge deems significant, to make a decision by one's own lights, and let counsel speak or keep silence as they will."

2. In a filing received on April 24, 1990, LRSD has now expressed its agreement with the position of PCSSD, NLRSD, and the Joshua intervenors. The Response of the Joshua intervenors, NLRSD, and PCSSD to the Motion for Leave to Intervene filed by Arma Hart and others, also filed on April 24, 1990, states that I did not become aware of the facts raising the question of disqualification until after April 13, 1990. This is not completely accurate. On April 13 I knew FilmTrust was the seller but thought the Kohns had no equity in the land. I later learned that they might have.

3. See *Bradley v. School Board of City of Richmond, Virginia*, 324 F.Supp. 439, 449 (E.D.Va. 1971): "There is an obligation not to disqualify one's self ... solely by reason of the personal burdens related to the task. The duty is the more compelling when a single judge has acquired by experience familiarity with a protracted, complex case, which could not easily be passed on to a second judge...."

4. Compare the practice of Judge Merhige in a similar situation: "The Court's refusal to read gratuitous letters concerning particular litigation is one which has not been precipitated by this action, but a practice invoked by the Court from the first day I had the honor of presiding as a Judge." *Bradley v. School Board of City of Richmond, Virginia, supra*, 324 F.Supp. at 449.

had learned this fact not from the judge but from another employee of the winning company. The district judge refused to disqualify himself and denied the motion to set aside the judgment. On appeal, this action was upheld. The fact of family relationship raised "a serious question of impartiality," the Court of Appeals said, 882 F.2d at 1569, but it did not, in context, establish that a reasonable person with full knowledge of all the facts would question the judge's impartiality. The judge's son was one of 83,000 employees of the winning company, his financial interest would not be affected by the outcome of the case, and the plant which employed him had nothing to do with the devices whose patentability was at issue. Various newspaper articles had questioned the judge's impartiality, but they did not necessarily show what the public thought. In a previous case between the same parties, the judge had ruled against his son's company. There are many differences between this case and the present one, and they point in different directions, but on the whole the case seems to cut against disqualification. Family relationship is normally a much more compelling circumstance than friendship.

Having weighed all these circumstances, I have decided that disqualification is not required, and that one should not disqualify unless one is required to do so. I do not believe that a reasonable person knowing all the facts of record would question my impartiality. I shall therefore not withdraw from the case.