John W. TYNAN, Appellant,

v.

UNITED STATES of America,
Appellee.

Gene Z. HANRAHAN, Appellant,

v.

UNITED STATES of America,
Appellee.

William T. P. SHEA, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 20335, 20394, 20395.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 27, 1967.

Decided April 5, 1967.

Petition for Rehearing en banc
Denied May 18, 1967.

See also, D.C., 260 F.Supp. 728.

Mr. Myron G. Ehrlich, Washington, D. C., (appointed by this court), for appellant in No. 20,335.

Mr. Charles B. Murray, Washington, D. C., for appellants in Nos. 20,394 and 20,395.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Charles A. Mays, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

These cases were before us in an earlier appeal, Hanrahan, et al. v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363 (1965), wherein the factual background of the cases is set forth.

The appellants have been found guilty by a jury of multiple counts of an indictment charging mail fraud. After argument of the earlier appeal, we, speaking through a divided panel, remanded the case to the District Court in order to augment the then record sufficiently "to enable us to resolve the questions raised by appellants' denial of speedy trial claim." We directed that:

"If the court should find that all the delay attributable to the prosecutor was necessary for fair and just prosecution of the charge of mail fraud, then the convictions will stand. If, on the other hand, the court should find that the prosecution was conducted with such disregard of appellants' interests that it can be said that the delay resulted from deliberate, or at least negligent, actions on the part of the prosecutor and the prosecutor fails to show 'that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay,' then appellants' Sixth Amendment rights have been denied and the convictions must be vacated and the indictments dismissed." 348 F.2d 363, 368 (footnotes omitted).

As a result of our remand, District Court Judge John J. Sirica, who was the judge who presided at the original trial of these appellants, heard the testimony of a number of witnesses, accepted in evidence a number of exhibits, and upon the completion of hearings spanning a total of eighteen court days, rendered a careful and detailed opinion upon the evidence produced before him and the arguments of counsel. United States v. Hanrahan, 255 F.Supp. 957 (D.D.C. 1966). The evidence and arguments were extensive. The transcript of the hearings on remand totals some 1300 pages. Judge Sirica's 28-page opinion finds that "the defendants have not been deprived of their Sixth Amendment right to a speedy trial. Furthermore, the Court is of the opinion that no unnecessary delay under Rule 48(b) [Fed.R.Crim.P.] is present which would require the Court, in the exercise of its discretion, to dismiss the indictment." 255 F.Supp at 971. Included in Judge Sirica's opinion is his finding that "*on the whole record of this case, and taking into consideration all of the circumstances, the government has demonstrated that the defendants suffered no serious prejudice as a result of the delays which did not ensue from the ordinary and inevitable delay.*" 255 F.Supp at 971. (Emphasis supplied.)

We have carefully considered this case. Outside the context of the sixth amendment, our concern for the problems confronting defendants' attempt to refute charges long delayed in prosecution has been expressed in Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210

(1965), and we have enlarged and elaborated our views in several subsequent cases, including Daniels v. United States, 123 U.S.App.D.C. 127, 357 F.2d 587 (1966); Powell v. United States, 122 U.S.App.D.C. 229, 352 F.2d 705 (1965); and Jackson v. United States, 122 U.S. App.D.C. 124, 351 F.2d 821 (1965). We recognize, however, that there are real and substantial differences between the problems of proof in the defense of a narcotics prosecution and those involved in defending against a mail fraud indictment and that these differences are inherently and vitally related to the possibility of prejudice resulting from delay in prosecution. The narcotics prosecutions which have caused our concern in Ross v. United States, *supra,* and the dozen or more later opinions, rely fundamentally upon an identification of a defendant as a result of a single brief contact by a Government witness who, in a relatively short period of time, has participated in a substantial number of virtually identical transactions. Confining our distinction from the Ross-type case only to the facts in the present case, we observe that the nature of the Government's proof in support of the several counts of the indictment is not of the nature that is blurred, obscured, dissipated, or destroyed by the passage of the period of time involved in this case. The transactions involving individual witnesses are generally unique in their experience, and where documentary evidence is accepted, it, by its very nature, retains its reliability.

In reviewing the record now before us, we do so with the admonition of (Johnny Ray) Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959), that "[w]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed." Recognizing this mandate, we said in (Raymond) Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964):

"[T]he balance between the rights of public justice and those of the accused has been upset against the Government only where the delay has been arbitrary, purposeful, oppressive or vexatious." (Citations omitted)

The appellants, in their effort to show prejudice to themselves as a result of the delay in reaching trial, argue that they were deprived of substantial evidence and witnesses because of the destruction by water of certain of their files stored in the house of one of the defendants in Pennsylvania. Judge Sirica treats of this factual situation in his opinion but points out that while this accident occurred in March or April of 1960, no effort was made by the defendant Shea to salvage or rehabilitate these records until October, 1960. This, incidentally, was during the period when the earlier indictment was pending in Puerto Rico. While concluding that the destruction of the defendants' records was an act of God, augmented by the carelessness of the defendants, Judge Sirica found that during the pendency of the second indictment the defendants:

"had available to them the names of several hundred potential witnesses * * * including over 400 persons representing more than 400 business firms who were clients of the defendants in the continental United States, 124 persons who were clients of the defendants in Puerto Rico and the Virgin Islands, 206 persons and firms who were lenders with whom the defendants had contacts, and 29 former employees of the defendants' corporation."

He points out in his opinion that the names of all potential witnesses were found in the corporate records produced by the defendants, that the addresses of all potential witnesses were forwarded to the defendants' attorneys by the prosecutor during trial in all instances where specific requests were made, and that the names and addresses of 28 potential witnesses who were living in the continental United States were listed in a defendant's motion for change of venue from Puerto Rico to the continental United States. Incidentally, none of these persons were called as defense witnesses during the trial of the case. Other de-

tails of non-called potential defense witnesses are set forth in Judge Sirica's opinion in the discussion of Government exhibit 186. We conclude upon this aspect of the present appeal that the evidence is overwhelming in support of the Government's position that no prejudice chargeable to the Government resulted to the appellants from the destruction of some of their records.

■ Upon the entire record measured by the mandate of this court fashioning the issues to be heard on remand we conclude that the findings and rulings of Judge Sirica are amply supported by substantial evidence, and require affirmance.

One further point is raised by at least two of the appellants in their present appeal. Appellants Hanrahan and Shea filed affidavits of prejudice against Judge Sirica, charging personal bias and prejudice under § 144, Title 28 U.S.C. By these affidavits, these appellants sought to disqualify Judge Sirica from presiding at the remand hearing because of bias allegedly revealed at or during the original trial of the case. Judge Sirica struck the affidavits of prejudice and accompanying certificates of counsel upon the ground of their legal insufficiency and, as heretofore indicated, conducted the remand hearing. We earlier denied appellants' petitions for "mandamus" upon this point. Appellant Tynan did not file an affidavit of prejudice against Judge Sirica but, of course, in this court takes the position that since no distinction may be made among the three appellants, any prejudice towards other appellants would be equally legally obnoxious to him.

The affidavits of prejudice filed by Hanrahan and Shea enumerate several specific allegations as the basis for the demand that the judge recuse himself. Each of the allegations related to some action taken or statement made by Judge Sirica during the course of the trial proceedings. To properly evaluate the affidavits we, of course, must rely upon the statutory provisions which are as follows:

"Whenever a party to any proceeding in a district court makes and files a timely and *sufficient* affidavit that the judge before whom the matter is pending has a *personal* bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. (Emphasis supplied)

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

■ It is well established that when presented with an affidavit of prejudice, the judge may not pass upon the truth or falsity of the allegations contained therein but must accept them as true for the purposes of passing upon the legal sufficiency of the affidavits. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Ex Parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913). If the statutory standards are met, the judge must recuse himself, even if the allegations are known by the judge to be false. Morse v. Lewis, 54 F.2d 1027 (4th Cir. 1932), cert. denied 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291. On the other hand, if the statutory requirements are not met, it is the duty of the judge to refuse to disqualify himself. Simmons v. United States, 302 F.2d 71 (3rd Cir. 1962). Applying these standards to the specific provisions of the quoted statute, we observe that the basis for disqualification is *personal* bias or prejudice which precludes the judge from impartially exercising his judicial responsibilities in a particular case. It is to be noted that a distinction is to be

drawn "between a judicial determination derived from evidence and lengthy proceedings had before the court, and *a determination not so founded upon facts brought forth in court,* but based on attitudes and conceptions that have their origins in sources beyond the four corners of the courtroom." In Re Federal Facilities Realty Trust Co., 140 F.Supp. 522 (N.D.Ill.1956) (emphasis added).

Reviewing the appellants' affidavits, we note again that they allege as factual basis for charges of prejudice only acts and conduct occurring in the courtroom during the trial of the present case or in relation to the court's official action in ruling upon issues and questions of conduct which were a part of the court proceedings in this case. However:

"It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S.Ct. 230, 65 L.Ed. 481 [Berger v. United States]) against wrongdoers, civil or criminal, acquired from evidence presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective." Craven v. United States, 22 F.2d 605, 608 (1st Cir. 1927).

■■ More succinctly stated, in order to be disqualifying the Supreme Court has construed the statute to establish that:

"The alleged bias and prejudice to be disqualifying *must stem from an extra-judicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.*" (Emphasis supplied.) United States v. Grinnel Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

It is perfectly obvious that of the asserted bias of Judge Sirica, none originated in any extrajudicial source, consequently we affirm the judge's action in refusing to recuse himself in these proceedings.

"There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." In Re Union Leader Corp., 292 F.2d. 381, 391 (1st Cir. 1961).

Affirmed.