**UNITED STATES of America**
v.
**John N. MITCHELL et al.**
**Crim. No. 74–110.**

United States District Court,
District of Columbia.
April 30, 1974.

See also, D.C., 377 F.Supp. 1326; D.C.Cir., 502 F.2d 375.

Leon Jaworski, Special Pros., Philip A. Lacovara, Counsel to the Special Prosecutor, Richard Ben-Veniste, Sidney M. Glazer, Asst. Special Prosecutors, Watergate Special Prosecution Force, Washington, D. C., for the United States.

William G. Hundley, Plato Cacheris, Washington, D. C., for defendant Mitchell.

William S. Frates, c/o Floyd, Pearson, Stewart, Proenza & Richman, Frates, Miami, Fla., for defendant Ehrlichman.

Sidney Dickstein, David Shapiro, Washington, D. C., for defendant Colson.

Jacob A. Stein, Washington, D. C., for defendant Parkinson.

John M. Bray, Washington, D. C., for defendant Strachan.

## OPINION AND ORDER

SIRICA, Chief Judge.

The present criminal case derives from a thirteen-count indictment charging seven individuals with conspiracy to obstruct justice and other offenses. The Court now has before it two motions, timely filed, for disqualification. Three defendants, John N. Mitchell, John Ehrlichman and Charles Colson jointly move that the Court be disqualified from further participation in this case pursuant to the provisions of Title 28 United States Code §§ 144 and 455[1] and the Fifth and Sixth Amendment rights to a fair trial. Defendant Gordon Strachan moves for disqualification or voluntary recusal on the same basis. Defendant Kenneth Wells Parkinson joins in both motions. The remaining two defendants, Harry R. Haldeman and Robert C. Mardian have not participated.

## I

■ Defendants Mitchell, Ehrlichman and Colson joined by defendant Parkinson have moved that the disqualification motions be referred to the Court Calendar Committee for disposition. The Special Prosecutor in his submission notes that, although such motions are ordinarily determined by the challenged judge, in a few instances judges have elected to refer such decisions elsewhere. He does not object to that being done here. The Court, however, is strongly opposed to such a procedure. To the Court's knowledge, the practice is without precedent in this Circuit. It is permissible at best, and under the statutes that govern here, may be improper. § 144 lays the decision-making burden upon the judge involved, and the part of § 455 most strongly relied upon by defendants calls specifically for the judge's opinion. "The Supreme Court has ruled that the judge has a lawful right to pass on the legal sufficiency of the affidavit, . . . subject to appellate review, of course, and we consider it the duty of the judge, when the showing for recusation is insufficient, to remain in the case." Eisler v. United States, 83 U.S. App.D.C. 315, 170 F.2d 273, 278 (1948). See also United States v. Bell, 351 F.2d 868, 878 (6th Cir. 1965) (challenged judge has duty to pass on sufficiency) and cases cited therein. A judge challenged under these statutes ought to be willing to shoulder the responsibility of ruling in the matter. Only the individual judge knows fully his own thoughts and feelings and the complete context of facts alleged. It follows that only he can be certain of the most equitable resolution. If the judge errs in his determination, the proper remedy is in appellate review. These considerations plus the delay inherent in the suggested procedure have convinced the Court that in acquiescing it would be setting a most

---

1. § 144. Bias or prejudice of judge

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

§ 455. Interest of justice or judge

Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

unwise precedent. The motion is therefore denied.

■ Likewise the proposed evidentiary hearing is unnecessary. The facts surrounding the Court's suggestion of possible grand jury witnesses are on the record under seal. The transcript will be made available to counsel at their request. In regards to the Court's meetings with Special Prosecution Force personnel, there are no relevant facts to be had. These proceedings included no discussion of evidence bearing on the guilt or innocence of any defendant in this case nor any discussion even remotely of the kind. An inquiry into the sufficiency of the affidavits as filed will satisfy defendants' rights. United States v. Partin, 312 F.Supp. 1355, 1361 (E.D. La.1970).

## II

■ When presented with an affidavit of prejudice made pursuant to § 144, a court may not pass upon the truth or falsity of the allegations, but must accept them as true for the purpose of determining the legal sufficiency of the affidavit. See Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Ex parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); and Korer v. Hoffman, 212 F.2d 211 (7th Cir. 1954).[2] "In the last analysis, the statute involved is not concerned with the actual state of mind of the judge or litigant but only with what the latter is willing to incorporate in an affidavit and counsel to indorse." Johnson v. United States, 35 F.2d 355, 357 (W.D.Wash.1929). The mere filing of an affidavit of prejudice does not automatically disqualify a judge, United States v. Gilboy, 162 F.Supp. 384, 388 (M.D.Pa.1958), but the judge must pass upon the legal sufficiency of the facts well-pleaded. See Green v. Murphy, 259 F.2d 591, 593 (3d Cir. 1958); Eisler v. United States, 85 U.S.App.D.C. 315, 170 F.2d 273, 278 (1948). While factual allegations may not be controverted, the affidavit itself must be strictly construed. See e. g., United States v. Gilboy, supra, 162 F.Supp. at 388, 389; Sanders v. Allen, 58 F.Supp. 417, 420 (S.D.Cal. 1944). The judge is presumed impartial. Beland v. United States, 117 F.2d 958, 960 (5th Cir.) cert. denied 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941). It must state facts as opposed to conclusions and generalities, Simmons v. United States, 302 F.2d 71, 76 (3d Cir. 1962); Inland Freight Lines v. United States, 202 F.2d 169, 171 (10th Cir. 1953); Boyance v. United States, 275 F. Supp. 772, 774 (E.D.Pa.1967), and while the information and belief of the affiant as to the truth of the allegations are sufficient, Berger v. United States, supra, 255 U.S. at 34, mere rumors and gossip are not enough, Id. at 33. The identifying facts of time, place, persons, occasion and circumstances must be set forth, Johnson v. United States, supra, 35 F.2d at 357, with at least that degree of particularity one would expect to find in a bill of particulars. See Morse v. Lewis, 54 F.2d 1027, 1032 (4th Cir. 1932); United States v. Gilboy, supra 162 F.Supp. at 392–393.

■ In assessing sufficiency of the facts alleged by affidavit, decisions have emphasized that any bias must be personal, that is, have its origin "in sources beyond the four corners of the courtroom." In re Federal Facilities Realty Trust, 140 F.Supp. 522, 526 (N.D.Ill. 1956). "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

In Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), Judge Meredith of the Eastern District of Missouri refused to disqualify himself from the retrial of

---

2. Nevertheless, the facts alleged should be analyzed in context. See, Tenants & Owners in Opp. to R. v. U. S. Dept. of HUD, 338 F.Supp. 29 (N.D.Cal.1972).

a criminal case where the defendant's affidavit of prejudice alleged that at sentencing following the first trial, the judge expressed his belief in the defendants' guilt and described them as deserving severe punishment. The Eighth Circuit Court of Appeals found no error in that decision noting that the judge's opinions derived from proceedings had before him and they did not constitute the personal bias contemplated by § 144. And in United States v. Dichiarinte, 445 F.2d 126, 132–133 (7th Cir. 1971), the court held: "The fact that the judge might have formed an opinion concerning the guilt or innocence of the defendant from the evidence presented at an earlier trial involving the same person is not the kind of bias or prejudice which requires disqualification." (citations omitted).

In a case that bears some striking similarities to the action at bar, Wolfson v. Palmieri, 396 F.2d 121 (2d Cir. 1968), the Second Circuit reaffirmed the principle that the alleged prejudice, no matter how demonstrated, must be personal as opposed to judicial. There Judge Palmieri was assigned, apparently by special assignment, the trial of a criminal indictment, and within a few days, the trial of a second related indictment. Following their conviction in the first case, the two defendants charged in both indictments moved to disqualify Judge Palmieri from the second trial. The motion followed appeal but preceded sentencing. Defendants objected to Judge Palmieri's continuation in the case (1) since it was closely related to the earlier indictment, (2) because of comments and rulings made by the judge at the prior trial, (3) because of pretrial rulings, and (4) because one of the judge's former law clerks was an assistant prosecutor and the defendants intended to claim prosecutorial misconduct. The Court of Appeals found nothing to indicate disqualifying prejudice and adjudged the § 455 claim regarding the former clerk without merit. The Second Circuit has also ruled that it is not improper for the same judge to sit at the trials of co-conspirators tried separately. United States v. DiLorenzo, 429 F.2d 216, 220–221 (2d Cir. 1970) cert. denied 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971). See also, United States v. Beneke, 449 F.2d 1259 (8th Cir. 1971).

In this Circuit the rule is equally well settled. The Court of Appeals has stated in Hurd v. Letts, 80 U.S.App.D.C. 233, 152 F.2d 121 (1945) and Eisler v. United States, *supra*, 170 F.2d 273, and more recently in Tynan v. United States, 126 U.S.App.D.C. 206, 376 F.2d 761, cert. denied 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967) and Brotherhood of Locomotive Firemen and Engineers v. Bangor & Aroostook R. Co., 127 U.S.App.D.C. 23, 380 F.2d 570 (1967) that bias or prejudice spoken of by § 144 must have originated from extrajudicial sources, and must bear directly on the then current proceeding. In the *Tynan* case, captioned below as United States v. Hanrahan, 248 F.Supp. 471 (D.D.C.1965) defendant Hanrahan, upon remand of his case following conviction, moved to disqualify the trial judge from continuing further. The affidavit filed under § 144 alleged that the judge (1) had expressed at the bench an opinion that defendant was guilty, (2) had told the prosecutor he should bring witnesses to refute defendant's testimony, (3) had threatened at trial to lock up defendant if he did not plead guilty, (4) during the proceeding said he did not want defendant to get a reversal on a technicality, and (5) said that defendant had had more than his day in court. Although as a matter of fact, some of the allegations were untrue, the Court of Appeals agreed with the trial judge that the allegations at face value did not constitute grounds for disqualification since none suggested attitudes developed from sources other than court proceedings or evidence in the case.

Additional well-reasoned decisions treating this point include Mirra v. United States, 379 F.2d 782 (2d Cir. 1966) cert. denied 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 667 (1967); Hodg-

don v. United States, 365 F.2d 679 (8th Cir. 1966) cert. denied 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); Gallarelli v. United States, 260 F.2d 259 (1st Cir. 1958), cert. denied 359 U.S. 938, 79 S.Ct. 654, 3 L.Ed.2d 638 (1959); United States v. Gilboy, *supra*, 162 F. Supp. 384.

■■■ Also applicable here· is the corollary principle that prior judicial determinations and inferences drawn therefrom are not grounds for recusal. In United States v. Partin, *supra*, 312 F. Supp. at page 1358, Chief Judge West noted,

> Recusal cannot be based on the Court's rulings in other cases nor on remarks or findings pertaining specifically to the facts or law in other cases in which the defendant was involved but must instead be predicated on extrajudicial attitudes and conceptions formed outside the courtroom. Tynan v. United States, 126 U.S.App. D.C. 206, 376 F.2d 761, 764 (1967), cert. den. 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967).

> Likewise, inferences drawn from prior judicial determinations are insufficient grounds for recusal because it is the duty of the judge to rule upon issues of fact and law and questions of conduct which happen to form a part of the proceedings before him. In re Federal Facilities Realty Trust, 140 F.Supp. 522 (N.D.Ill.—1956); Barry v. Sigler, 373 F.2d 835 (CA8—1967); United States ex rel. Bennett v. Myers, 381 F.2d 814 (CA3—1967).

In *Partin*, four of the five grounds for disqualification listed in the defendant's affidavit cited court rulings, one in the case then pending and the others in three unrelated and separate proceedings in which the defendant was a party. In one civil action mentioned, for example, defendant claimed that "comments from the court to counsel for affiant [at a deposition hearing] are replete with threats of contempt, with imposition of the heaviest fines possible and that affiant showed contempt for the judicial

process, engaged in insulting comments at his deposition, and purposeful evasions." United States v. Partin, *supra*, 312 F.Supp. at 1356–1357. Partin also cited the action of Chief Judge West in recusing himself without an assignment of reasons, from another case in which he, Partin was one of the defendants. Accepting all allegations as true, the court found references to prior judicial acts and decisions irrelevant. See also Maret v. United States, 332 F.Supp. 324 (E.D.Mo.1971).

In United States v. Garrison, 340 F. Supp. 952 (E.D.La.1972), the defendant in a conspiracy to obstruct justice case sought the disqualification of Judge Christenberry pursuant to § 144 on the ground that "the court launched a personal attack" on him when ruling at an evidentiary hearing in a prior unrelated case. In the prior cause, defendant Garrison, as a prosecuting attorney, was pursuing the conviction of one Clay L. Shaw for conspiracy to kill President John F. Kennedy. Garrison alleged that in his ruling Judge Christenberry stated as follows:

> . . . that I wrongfully used certain esoteric methods to 'implant' an otherwise untrue story in the mind of a state witness, that our prosecution was conducted in bad faith and that my sole interest in the case was financial.

United States v. Garrison, *supra*, 340 F.Supp. at 955.

The defendant continued,

> Feeling strongly in the matter, I caused to be issued a press release denouncing your honor's findings.
>
> · . . .
>
> Given the personal character of the court's remarks in its opinion and my equally personal remarks in my press release, it is submitted that this court cannot sit in fair judgment of me. The bias of the court, conscious or otherwise, is patent.

United States v. Garrison, *supra*, 340 F.Supp. at 955.

The court ruled that prior judicial rulings adverse to a current defendant or prior judicial exposure to a defendant do not constitute the bias or prejudice that make recusal appropriate.

A further application of the rule is found in United States v. Bell, 351 F.2d 868 (6th Cir. 1965) cert. denied 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210 (1965) where the affidavit of prejudice has substantial parallels to those at bar. There the defendant, Bell, was charged with jury tampering in connection with a prosecution against former Teamsters Union President, James R. Hoffa. The trial judge had presided over the grand jury investigation leading up to Bell's indictment, and although he voluntarily recused himself from the trial of others similarly indicted by the same grand jury, he denied Bell's motion for disqualification. The Sixth Circuit Court of Appeals, which sustained Judge Gray in that ruling, classified the charges of bias and prejudice as follows:

1. A portion of the judge's charge to the grand jury which indicated that the judge had some general knowledge that the subject of jury tampering would be investigated by the grand jury; 2. A hearing, in which defendant was ordered to answer non-incriminating questions of the grand jury prior to his indictment; 3. The judge's hearing of evidence on pretrial motions in this case and three related cases and in disbarment proceedings in two other related matters; and 4. The judge's action in recusing himself from two related cases.

United States v. Bell, supra, 351 F.2d at 878.

General notice in the affidavit of the court's judicial contract with related proceedings and evidence, although extensive, did not provide a basis upon which to infer prejudice. The court found nothing in these circumstances to warrant disqualification.

### III

The present affidavits share common statements and conclusions which, for convenience in analysis, may be divided into six categories: (1) the Court's actions and participation in other proceedings; (2) publicity attaching to the Court's past actions; (3) the Court's association with the Special Prosecutor; (4) a supposed prejudgment by the Court of an issue likely to arise in this case; (5) the Court's special assignment of the case; and (6) the assertion that the Court has been represented in other matters by attorneys who appear in this case. The Court will consider each of these grounds in turn.

 Under the first subject heading, actions and participation in other proceedings, defendants have noted an extensive variety of events. In both affidavits defendants quote at length although not always in context,[3] from the record in United States v. Liddy et al., D.D.C., 345 F.Supp. 217, tried by the Court in January, 1973. The statements proffered as facts, claim that the Court expressed a belief that criminal liability extended beyond the seven persons there charged; regarded motivations of those

---

3. An example is the quotation at page 12 of the joint affidavit and page 6 of defendant Strachan's affidavit attributed to the Court alleging a remark to defendant Liddy in October, 1973 that "you who are relatively low on the totem pole [are] sentenced to thirty years in prison and those that planned, organized and directed the clandestine operation could be walking the streets free today." As a matter of fact, the Court made no such statement to defendant Liddy. On October 16, 1973, there was a hearing on a motion by defendants Hunt, Barker, Sturgis, Gonzalez and Martinez for bail pending imposition of final sentences. Defendant

Hunt's attorney argued that "there is an inequality or at least appearance of an inequality as between the circumstances of Mr. Hunt, Mr. McCord and Mr. Segretti." He then relied on a statement of Senator Talmadge at the Senate hearings that the persons who did the dirty work were in jail while the planners who also pleaded guilty were free on bond. The Court looked at the transcript of the hearing to examine Senator Talmadge's exact words and then *quoted* the words set forth in the affidavits. Senator Talmadge had directed these remarks at Hunt and the Court at no point adopted these words (Tr. 10/16/73, pages 25–26).

defendants as a crucial issue in the case; questioned defendants entering guilty pleas and witnesses concerning their involvement and that of others; expressed disbelief at some of the answers given; read colloquy and testimony occurring out of the jury's presence to the jury; suggested persons whom the prosecutors might consider calling before the grand jury investigating "Watergate"; expressed the hope that the Senate Select Committee on Presidential Campaign Activities would finally resolve matters treated in the case; used provisional maximum sentences to force the cooperation of convicted defendants in the case with investigating authorities; observed, following the statements of one defendant to the effect that others were involved in "Watergate," that it had done the right thing in asking questions at trial; and finally, presided at final sentencing despite the motion of some defendants for disqualification. The affidavits further comment upon the Court's acquaintance, via subsequent proceedings, with evidence potentially relevant to the instant case. The specific instances cited include Court custody of White House documents submitted by John W. Dean, III, copies of which were delivered to the Senate Select Committee on Presidential Campaign Activities and federal prosecutors by the Court; acceptance of a sealed packet from the Special Prosecutor said to contain evidence relating to defendant Strachan; a Court conference

with columnist Jack Anderson following publication by Mr. Anderson of grand jury minutes;[4] Court examination of White House tape recordings produced in October, 1973, pursuant to grand jury subpoena; and examination by the Court of materials contained in a report of the June 5, 1972 grand jury filed March 1, 1973, and later forwarded to the House Judiciary Committee.[5] Mention is made as well of the fact that the Court entered an order conferring immunity from prosecution under Title 18 U.S.C. § 6002 on defendant Strachan, compelling the defendant, over his objection, to testify before the Senate Watergate Committee; that the Court has conferred similar witness immunity upon other persons who may testify in this action; that the Court has received the guilty pleas of and will sentence three persons likely to testify herein; and that the Court has met privately on at least two occasions with members of the Watergate Special Prosecution Force.

Applying the standards set out in part II to these alleged facts, the conclusion is inescapable that defendants' affidavits are not sufficient. Every action, decision and comment of the court cited by defendants arose in the course of official judicial activity. Statements concerning the truth or falsity or completeness of testimony at the *Liddy* trial had their basis in the evidence adduced in court. They reflect, if anything, a judicial state of mind rather than a personal

---

4. Although the decision here is not affected by the inaccuracy of this allegation, it should be clarified for the record that the Court has not at any time met with Mr. Anderson. The Court did meet with his attorneys on one occasion at which time the attorneys delivered to the Court copies of grand jury minutes that had come into Mr. Anderson's possession. Thereafter, publication of such minutes ceased. The several judges of this district, including the Court, later instructed the United States Attorney to commence an investigation into the "leak" of these transcripts.

5. Defendant Strachan at page 4 of his motion suggests that the Court has weighed

and ruled on materiality of evidence. He defines materiality as meaning that evidence has probative weight. The Court, however, in describing the content of the Grand Jury report sent to the House Committee, uses the term "material" in its normally understood sense, that is, as simply bearing a relation to questions or propositions at issue. It is distinguished from relevance, "the tendency of the evidence to establish a material proposition." McCormick on Evidence § 185 at 435 (1972 ed.). Nevertheless, however the Court's description be understood, it related to issues before the House Judiciary Committee, not issues before the Court in this case.

bias. An expressed belief that others might be involved, that a witness had not fully revealed facts known to him, that a defendant had not answered a question truthfully, that all pertinent · facts had not been produced before the jury, that the Court had been right in asking questions and an expressed hope that other authorities might uncover all of the relevant facts, are matters that have their roots in the record then before the Court. Such is the case as well regarding encouragement that defendants, ·following conviction, cooperate with the grand jury and Senate Committee,[6] acquainting the jury with testimony initially taken out of its presence, and the Court's suggestion that certain persons be called before the grand jury as possible sources of additional information. If there be any indication of prejudice in such actions, and the Court perceives none, it is by no means personal as that term is used in § 144. The Court, for example, in suggesting grand jury witnesses for the government's consideration cited specific parts of the record which gave rise to the instance, notably the tape recorded newspaper interview of witness Alfred C. Baldwin produced *in camera* and the court testimony of witness Hugh Sloan.

And the Court made it clear that it was "not accusing any of these people of wrongdoing." Rather the intent there, as throughout the proceedings, was to ascertain the truth and protect the integrity of the judicial process. As Judge Merhige so aptly stated in denying a motion to disqualify him in Bradley v. School Board of the City of Richmond, Virginia, 324 F.Supp. 439 (E.D. Va.1971), rev'd on other grounds 462 F. 2d 1058 (4th Cir. 1972),

> Language to the effect that certain steps and litigation were taken by a party at the Court's suggestion is ambiguous. Indeed, the Courts often have a duty to raise matters sua sponte when evidence indicates that equity and justice require a law suit to take a particular turn. See, e. g., Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L.Ed.2d 815 (1966). Courts have a duty in certain instances to question witnesses and on occasion to call impartial experts to testify as witnesses for the court. Normally these steps would not be construed as an indication of bias or prejudice on the part of the presiding judge for the reason that they are usually taken on the basis of informa-

---

6. Sentence imposition based in part upon a defendant's cooperation with the government is a "universally known possibility." United States v. Sweig, 454 F.2d 181, 184 (2d Cir. 1972) ; United States v. Sclafani, 487 F.2d 245 (2d Cir.), cert. denied 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973). Indeed the American Bar Association has approved the practice of granting sentence concessions, in furtherance of the public interest in the effective administration of criminal justice, to a defendant who "has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct." American Bar Association Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.8(a)(v) (Approved Draft 1968).

The use of the statutory procedure made available by Congress under 18 U.S.C. § 4208(b) *automatically* provides for· a tentative maximum sentence until the sentencing judge receives the detailed study and report

submitted to him under that section's provisions and cannot be fairly said to show bias or to involve coercion of the defendants. Use of that section is routine and simply enables the judge to exercise his sentencing discretion by ensuring that he has access to the fullest information about the offenders. Nothing in Section 4208(b) was designed to limit the discretion of the trial judge to consider the degree of a defendant's cooperation or any other legitimate factor, in fixing his final sentence. On the contrary, one of the express purposes of the delayed sentencing provisions of the statute was to allow the judge to determine during the observation period, the prospects of the defendant's rehabilitation. See 104 Cong.Rec. 12392 (remarks of Congressman Celler).

It might be noted as well that the defendants testified before the Select Committee and grand jury under grants of immunity. Under the provisions of 18 U.S.C. § 6001 et seq., they were legally obligated to appear and testify.

tion obtained by the judge in the courtroom where it is the judge's duty to form opinions. See Baskin v. Brown, 174 F.2d 391, 394 (4th Cir. 1949).

Bradley v. School Board, *supra*, 324 F.Supp. at 445.

The Court's contact with other proceedings during 1973 and to date cited by defendants' affidavits occurred pursuant to the Court's exercise of its office as Chief Judge charged with supervisory responsibilities over grand juries and the handling of various miscellaneous proceedings. Insofar as the allegations treat rulings on questions of law, such as defendant Strachan's reference to a grant of witness immunity before the Senate Select Committee, they are insufficient as a matter of law to show prejudice. Whether or not a defendant regards a judge's interpretation of law as adverse to him, the cases make it clear that bias may not be inferred therefrom.[7] Sentencing decisions also are rooted in law and subject to this same rule. Defendants assume that sentencing of Messrs. Dean, Magruder and LaRue will post-date their trial, and further conclude that the Court's presence as presiding judge will affect the testimony of these men if called as witnesses. The assumption is dubious, and the conclusion fails to explain why, if the witnesses are likely to testify with sentencing in mind, a view the Court does not adopt, it will make any difference what judge presides at trial.

The Court's acquaintance with information perhaps pertinent to this case has in every instance flowed from court proceedings. There has not been, nor is there alleged to have been, any extrajudicial source. Although it does not bear on the decision here, defendants should be aware that the Court has not examined packets of information lodged under seal concerning Gordon Strachan and John Dean, nor has it read the White House documents submitted by Mr. Dean in May, 1973. Realizing that it probably has never seen or heard at least a large majority of the evidence that might be produced at trial, the Court has consciously avoided forming opinions based on the information that has come before it in various proceedings. The existence of such opinions, however, still would not constitute the personal bias or prejudice proscribed by § 144. Judges routinely pre-view evidence or information bearing on a case in other settings, with no thought of disqualification arising as a result. For example, in multi-defendant criminal cases, it is not unusual that one or more defendants enter guilty pleas just before trial and disclose to the trial judge the facts of their misconduct. Although other defendants are not heard at proceedings wherein voluntariness is assessed, and although the court may there become acquainted with evidence tending to incriminate remaining defendants, no one suggests that disqualification should follow.[8]

---

7. Immunity to defendant Strachan was granted at the behest of the Senate Committee; it was not an action initiated by the Court. If such an immunity application is in proper form, a judge is obliged to grant it. See Application of United States Senate Select Committee, 361 F.Supp. 1270 (D.D.C.1973). In no sense could such an order be said to indicate bias for or against anyone.

8. Defendants have cited two related cases in which Judge Hauk of the Central District of California recused himself *sua sponte* following motions in part because he felt that his participation in the investigatory phase of the cases would help create "the *appearance* of *possible* personal bias." United States v.

Zerilli, 328 F.Supp. 706, 708 (D.C.Cal.1971), United States v. Zarowitz, 326 F.Supp. 90, 92 (D.C.Cal.1971) (emphasis in original). To suggest, however, as defendants do, that these two decisions establish the rule that "a judge must recuse himself if his judicial assistance in the investigation of a case has caused him to pre-view evidence involving the defendants," is to build a house upon sand. Judge Hauk emphasized that the application of disqualification law to his case was *sui generis*, that the motions were legally insufficient, and quoted at length from Judge Youngdahl of this court who stated in United States v. Quattrone, 149 F.Supp. 240, 242 (D.D.C.1957), "The Court does not believe that any general principles can be laid

Those meetings with the Special Prosecutor and his personnel that occurred in the absence of other attorneys were necessitated by the Court's duties relating to grand juries, and again fall into the category of judicial activity which cannot give rise to personal prejudices. Further, as already stated, these conferences did not involve discussions of evidence bearing on defendants' guilt or innocence.

The affidavits, in short, lack a recitation of facts or alleged facts sufficient to "fairly convince a sane and reasonable mind that the judge does in fact harbor the personal bias or prejudice contemplated by the statute." United States v. Hanrahan, *supra*, 248 F.Supp. at 475 citing United States v. Hoffa, 245 F.Supp. 772 (E.D.Tenn.1965) and Fieldcrest Dairies v. City of Chicago, 27 F. Supp. 258 (N.D.Ill.1939) rev'd on other grounds, 122 F.2d 132 (7th Cir. 1941), vacated 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942). Defendants do not, indeed cannot, cite any indication of prejudice or bias on the Court's part adverse to them. Their best effort consists of alleging a battery of facts from which it is hoped one could infer some bias favorable to the prosecution. Even, then, however, defendants have cited nothing to suggest that any such bias, which the Court assures them does not exist, is personal. The Court cannot in good conscience accept this as a ground for disqualification.

■ As a second reason for disqualification, defendants have cited public comment, both pro and con, concerning the Court's decisions in prior proceedings and have noted contacts with news media representatives which include a 70th-year birthday party, interviews seeking biographical information and portrait sketches by news media artists. Defendants apparently draw from these circumstances a conclusion that the Court has developed a personal stake in the conviction of defendants at bar, and relies upon such convictions for some form of "vindication." Defendants conjecture on this point is wholly inappropriate. The Court feels no need for vindication of any sort and seeks none. The Court's sole interest here, as always, is a professional interest in the proper administration of justice. There is nothing in the alleged facts propounded by the defendants to reasonably support a contrary conclusion. In fact, their own reference to public reports and comment which both praise and assail the Court for the same action, reveals the fallacy of looking to public opinion for "vindication." Defendant's argument lacks any merit whatsoever.

■ Turning to the third item, a reference to the Court's having attended a dinner at which the Special Prosecutor was guest of honor and having been photographed with Mr. Jaworski,[9] the Court again finds no reasonable basis for defendants' conclusion that a disqualifying connection of some sort exists between judge and prosecutor. If such social contacts between judges and members of the bar were to form a basis for recusal, then judges would either become near social hermits or we would be left with a non-functioning judiciary.

■ The fourth category of allegations appearing in the affidavits also treats a single event: statements regarding fair trial made by the Court at the Circuit Judicial Conference in March

---

down concerning the degree to which an appearance of bias, interest or improper motive must exist before voluntary disqualification becomes desirable in any particular case." United States v. Zarowitz, supra, 326 F.Supp. at 93 n. 6. What these cases do illustrate is the wisdom of having individual judges decide the question 'of their own disqualification in a given case. It may well be that introspection will dictate either recusal or non-recusal in circumstances where other

judges would reach the opposite conclusion based on their necessarily incomplete knowledge of the situation. United States v. Bell, supra, 351 F.2d 868 is a complete answer to defendants' reliance on Zerilli and Zarowitz.

9. Defendants do not allege as fact, although they cite newspaper reports that the Court and Special Prosecutor "bantered" about this case. The report in fact is untrue.

**1324**

of this year. Transcripts of the questions and answers, later televised, show that in response to the question, "Is there any doubt in your mind about these men's [defendants at bar] abilities to get fair trials?" the Court stated, "I think they can get just as fair a trial in the District of Columbia as any federal court in the United States. I have no doubt about that. Thank you." When the subject was raised again, the Court responded, "Well, in my opinion, any defendant, any person who happens to be a defendant in this jurisdiction, in my opinion can get just as fair a trial here as any jurisdiction in the country." Fairly interpreted, these comments address the quality of the federal judiciary in the District of Columbia and do not concern changes of venue, let alone constitute a prejudgment on motions for change of venue which to date have not been filed. Even, however, construed in the light most favorable to defendants' conclusion, the reported statements reveal only a then current and general impression which existed, as is always the case, in the context of an assumption that an unbiased jury may be found in the district. Whenever such assumption proves incorrect, or appears likely to fail in a given case, the case may be transferred. Any motions for change of venue, as well as other motions that may be filed herein, will be decided on their merits.

▉ The Court's assignment of this cause to itself for all purposes, the fifth area of concern to defendants, in no way displays an overweening interest on the Court's part. Under the local rules of this Court, "[i]f the Chief Judge determines at the time an indictment is returned that the case will be protracted and that the expeditious and efficient disposition of the court's business requires assignment of the case on a non-random basis, he may specially assign the case to any active judge for all purposes." See, Local Rule 3–3(c). Such was the situation here. Futhermore, if the Chief Judge wishes to try cases without the burden of carrying a full calendar, an arrangement contemplated by the Local Rules of the Court, he must assign such cases to himself specially since he is not included in the random assignment program. Thus, in addition to the exercise of administrative and other duties, the Court assigned itself four protracted cases for trial during its tenure as Chief Judge. There is nothing unusual about this assignment, especially since it comports with the principles governing the assignment of related cases as stated in Local Rule 3–4(d). It is one dictated by the interest in judicial economy and order, and certainly not subject to the insinuations present in defendants' affidavits.

▉ Finally, it is proposed that appearances by Mr. David Bress, attorney for defendant Mardian, in mandamus proceedings against this Court while United States Attorney some years ago, an appearance by Mr. John J. Wilson, attorney for defendant Haldeman, as amicus curiae before the Court of Appeals during proceedings involving a case tried by the Court, and an appearance by the Special Prosecutor in a recent mandamus proceeding against the Court, each constitute a relation or connection with parties or attorneys sufficient to render it improper for the Court to proceed herein. The argument is apparently a makeweight. Representation by Mr. Bress and the Special Prosecutor in mandamus proceedings was in reality on behalf of the government. The Court was a nominal respondent. It is common practice that when the Court of Appeals seeks an answer from respondents in a mandamus case pursuant to Rule 21, Federal Rules of Appellate Procedure, the party which prevailed below files a brief supporting the judge's position. Such a practice does not, for example, disqualify any judge so represented from hearing all further cases brought by the United States while the then incumbent United States Attorney remains in office. Since mid-1968, judges in this district have been nominally represented in mandamus cases on

at least forty-five occasions.[10] The logic of defendants' arguments would again carry us to the point where few if any judges would be permitted to hear cases.

In the rare instances where neither party below supports the trial court's decision, the Court of Appeals may require the judge to enter an appearance on his own behalf or appoint an amicus to defend the judge's position. The latter procedure was adopted when the Court of Appeals by order of September 29, 1972, *sua sponte* appointed Mr. Wilson to argue in favor of a ruling by the Court in United States v. Ammidown, D.D.C., Crim.Case No. 72–1694. Although Mr. Wilson conferred with the Court about that case, he never represented the Court as contemplated by § 455 nor has he ever represented the Court in the matter at bar or any other proceedings to the Court's knowledge. These circumstances are wholly unlike anything appearing in Texaco Co., Inc. v. Chandler, 354 F.2d 655 (10th Cir. 1965) cert. denied 383 U.S. 936, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966) and Rapp v. Van Dusen, 350 F.2d 806 (3d Cir. 1965).

■ Just as statutory authority for disqualification is utterly lacking, so defendants' argument that due process requires recusal here is without merit. As the Special Prosecutor has indicated in his brief, the legal authorities cited in support of the contention all look to distinct situations. In Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954) the Court ruled that a judge who was personally embroiled with defense counsel during a trial could not sit at the subsequent contempt proceeding. In In re Murchison, 349 U.S. 133, 75 S. Ct. 623, 99 L.Ed. 942 (1955), the Court ruled that it was a denial of due process for a judge to sit at a contempt proceeding where he had previously sat as the one-man grand jury permitted by state law. In Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) the judge had been the target of a contemnor's insolence, and the Court ruled that "[n]o one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication." In Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) the village mayor was disqualified to sit in a traffic case because a substantial portion of the village fund, for which he bore responsibility, was obtained through fines in the mayor's court. See also Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).[11]

### IV

■ As a final consideration contributing to its decision, the Court cannot overlook the fact that it has an obligation to deny insufficient recusal motions. "There is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." In re Union Leader Corp., 292 F.2d 381, 391 (1st Cir. 1961). See also, Tynan v. United States, *supra*, 376 F.2d 761, Eisler v. United States, *supra*, 170 F.2d 273 and United States v. Caraway, 483 F.2d 215,

---

10. Records in the United States Court of Appeals for this Circuit reveal that the following judges have been represented by the United States Attorney, District of Columbia Corporation Counsel, or other parties in mandamus proceedings: Panel on Multidistrict Litigation, District Judges McGuire, Curran, Walsh, Sirica, Hart, Jones, Corcoran, Gasch, Smith, Robinson, Waddy, Gesell, Pratt, Green and Parker and the District Judges generally, and Magistrate Lawrence Margolis.

11. Similarly, additional cases cited that discuss the appearance or substantial possibility of bias both suggest the need for each judge to follow his own conscience in considering the totality of the facts presented, and rest on distinguishing factors. In Public Utilities Commission v. Pollak, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 793 (1952), for example, Justice Frankfurter disqualified himself because his feelings were "strongly engaged as a victim of the practice" at issue and might well appear to govern his decision. In Whitaker v. McClean, 73 App.D.C. 259, 118 F.2d 596 (1941), the judge's expression of hostility toward the defendant, apparently far in excess of anything justified by the record, created a disqualifying bias or at least appearance thereof.

219 (5th Cir. 1973) (dissenting judge declined to disqualify himself). In Edwards v. United States, 334 F.2d 360 (5th Cir. 1964) cert. denied 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965), Judge Rives, although desirous of excusing himself from a rehearing en banc, stated,

> After such study as I could give the matter, I reached the conclusion that whether a judge should recuse himself in a particular case depends not so much on his personal preference or individual views as it does on the law, and that under the law, I have no choice in this case.

> \* \* \* \* \* \*

> In the absence of a valid legal reason, I have no right to disqualify myself and must sit.

Edwards v. United States, *supra*, 334 F.2d at 362 n. 2.

See also Kelley v. Metropolitan County Board of Education, 479 F.2d 810, 812 (6th Cir. 1973) (concurring opinion). As definitively stated by Justice Rehnquist in Laird v. Tatum, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972),

> Those federal courts of appeals which have considered the matter have unanimously concluded that a federal judge has a duty to *sit* where *not disqualified* which is equally as strong as the duty to *not sit* where *disqualified*. (citations omitted).

Laird v. Tatum, *supra*, 409 U.S. at 837 (emphasis in original).

The Court has no hesitation in recusing itself when the circumstances warrant. As recently as last December, the Court voluntarily disqualified itself in the resentencing of a defendant who was tried before the Court in 1971. Here, however, mindful of its duty and finding the affidavits insufficient as a matter of law, the Court must deny the motions.

So ordered.