**Boyd McCHRISTION, Plaintiff,**

v.

**Sue HOOD, Defendant.**

**No. S 82–479.**

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 1, 1982.

Boyd McChristion, pro se.

Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for defendant.

### ORDER

SHARP, Chief Judge.

The plaintiff in this case is an inmate at the Indiana State Prison at Michigan City, Indiana, where he filed this action pursuant to 42 U.S.C. § 1983. This matter is presently before the Court on plaintiff's Motion for Change of Judge.

The statutes governing disqualification of a judge for alleged bias or prejudice are set forth at 28 U.S.C. §§ 144 and 455. 28 U.S.C. § 144 reads as follows:

**§ 144. Bias or prejudice of judge**

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 455 also reads as follows:

**§ 455. Disqualification of justice, judge or magistrate.**

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial inter-

ests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

(1) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

(2) the degree of relationship is calculated according to the civil law system;

(3) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(4) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

(i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

Construing plaintiff's motion in the liberal light of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and noting that 28 U.S.C. § 455 does not mandate the filing of an affidavit of bias as required by 28 U.S.C. § 144, this Court will not view plaintiff's failure to file an affidavit as fatal to the motion for change of judge.

Under both 28 U.S.C. § 144 and § 455, plaintiff is required to allege a *personal* bias or prejudice on the part of the presiding judge. The word "personal" as used herein was defined in the seminal case of *Craven v. United States,* 22 F.2d 605, 607–608 (1st Cir.1927), cert. den., 276 U.S. 627, 48 S.Ct. 321, 72 L.Ed. 739:

"Personal" is in contrast with judicial; it characterizes an attitude of extrajudicial origin, derived *non coram judice.* "Personal" characterizes clearly the prejudgment guarded against. It is the significant word of the statute.

This insistence that the bias be personal and extrajudicial, not general or judicial, was echoed by the Supreme Court of the United States in *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966):

The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.

Thus, as Judge Sprecher articulated in *United States v. Jeffers,* 532 F.2d 1101, 1111–1112 (7th Cir.1976):

"Prior to trial, the defendant made a verified motion for change of judge in accordance with U.S.C. § 144. The defendant contended that since Judge Sharp had already sat at numerous trials concerning the exploits of the Family, and since the judge had presided at defendant's prior conspiracy trial, the judge was prejudiced against the defendant and was required to recuse himself. Judge Sharp denied the motion and presided at the trial.

"A judge when presented with a timely motion under § 144 must recuse himself if the motion alleges facts sufficient to show judicial bias even though he may know them to be entirely false. *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921). The judge may not judge the verity of the facts presented, but must judge their sufficiency. *Hodgson v. Local 2, Distillery Workers,* 444 F.2d 1344, 1348 (2nd Cir.1971). The two basic facts presented by the defendant's motion are 1) that Judge Sharp had presided and would preside over numerous trials concerning alleged Family members, and 2) that Judge Sharp presided at the defendant's prior trial. The defendant alleged no facts which directly showed Judge Sharp's bias, but relied only on the inference that the intimate connection with the defendant's prior trial and other Family trials would create bias.

"We have dispatched this type of claim before. In *United States v. Dichiarinte,* 445 F.2d 126, 132 (7th Cir.1971), Judge Swygert wrote:

'The fact that the judge might have formed an opinion concerning the guilt or innocence of the defendant from the evidence presented at an earlier trial involving the same person is not the kind of bias or prejudice which requires disqualification.'

Accord, *Wolfson v. Palmieri,* 396 F.2d 121 (2nd Cir.1968). Similarly, 'inferences drawn from prior judicial determinations are insufficient grounds for recusal because it is the duty of the judge to rule upon issues of fact and law and questions of conduct which happen to form a part of the proceedings before him.' *United States v. Partin,* 312 F.Supp. 1355, 1358 (E.D.La.1970). In the Watergate conspiracy trial of Mitchell, Ehrlichman, Colson and others, several defendants moved for the recusal of Chief Judge Sirica, because of his involvement in so many aspects of the Watergate indictments and prosecutions. In a lengthy and well-written opinion, Judge Sirica denied recusal on the ground that the allegations showed only prior judicial actions, and that no 'personal' as opposed to 'judicial' bias has been alleged. *United States v. Mitchell,* 377 F.Supp. 1312, 1320 (D.D.C.1974). As Judge Sirica noted *id.* at 1316, citing *Beland v. United States,* 117 F.2d 958, 960 (5th Cir.), *cert. denied,* 313 U.S. 585, 61 S.Ct. 1110, 85 L.Ed. 1541 (1941), '[t]he judge is presumed impartial.' All the defendant alleged in this case was prior judicial actions on the part of Judge Sharp. If from these we infer that Judge Sharp developed personal bias toward the defendant, we are overlooking the basic presumption that a judge approaches each new case with impartiality and conducts the case on its own merits from the evidence there presented quite apart from any other case he might have heard. If the rule were otherwise, the Family would long ago have run through the judges in Indiana and possibly in all of the Seventh Circuit."

This elaborate statement of the law was reaffirmed by Judge Pell speaking for the court in *U.S. v. Harris,* 542 F.2d 1283 (7th Cir.1976), at pages 1303–1304. The plaintiff's motion to disqualify relates only to *judicial* conduct. For other cases in the same vein as *Jeffers* and *Harris,* see *U.S. v. Clark,* 605 F.2d 939 (5th Cir.1979), and *U.S. v. Sutton,* 605 F.2d 260 (6th Cir.1979).

Of particular relevance is the decision of Chief Judge Edelstein in *U.S. v. International Business Machines,* 475 F.Supp. 1372 (S.D.N.Y.1979). Therein Judge Edelstein ably collects the authorities on the subject and concludes as follows:

"Whether examined individually or in the aggregate, IBM's allegations demonstrate no personal extrajudicial bias or prejudice on the part of this court. Judge Sirica's characterization of defendants' motion for disqualification in *United States v. Mitchell* is equally apt here: '[Defendant's] best effort consists of alleging a battery of facts from which it is hoped one [w]ould infer some bias favorable to the prosecution. Even, then, however, defendants have cited nothing to suggest that any such bias, which the

court assures them does not exist, is personal.' 377 F.Supp. at 1323. IBM's affidavit of bias and prejudice consists *entirely* of judicial actions taken within the four corners of the courtroom in the course of this proceeding. Those judicial actions, whether ultimately upheld on appellate review or not, form no conceivable basis for IBM's present conclusion that the court possesses a bias and prejudice that 'could not have come from any source other than an extrajudicial source.' IBM Aff. ¶ 4. This court has no interest in the outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied. IBM identifies no personal prejudice and bias on the part of this court because none exists.

"Accordingly, IBM's request that this court disqualify itself pursuant to 28 U.S.C. §§ 144 and 455 and the fifth amendment to the United States Constitution is denied.

"So ordered."

For a painful and penetrating analysis of the values that are involved in a motion such as made by this plaintiff, see the opinion of Judge Roettger in *U.S. v. Cerrella,* 529 F.Supp. 1373 (S.D.Fla.1982). See also, *Wilks v. Israel,* 627 F.2d 32 (7th Cir.1980); *United States v. Menk,* 406 F.2d 124 (7th Cir.1968), cert. den., 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969); *Marquette Cement Mfg. Co. v. Federal Trade Commission,* 147 F.2d 589 (7th Cir.1945), *rev'd on other grounds sub nom.; Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *Duplan Corp. v. Deering Milliken, Inc.,* 400 F.Supp. 497 (D.S.C.1975), *rev'd on other grounds,* 522 F.2d 809 (4th Cir.1975); *Matter of Searches Conducted on March 5, 1980,* 497 F.Supp. 1283 (E.D.Wisc.1980), and cases cited at page 1288 of opinion. For presumed bias or prejudice on cases remanded subsequent to appeal, see Seventh Circuit Rule 18.

It is not enough that the judge acquires from the evidence a personal conviction as to the merits of the case, nor that he has ruled adversely to the party at some earlier stage of the case. Similarly it is not enough that he has ruled favorably to the opponent of the party who is seeking disqualification. (citations omitted).

13 Wright, Miller & Cooper, Federal Practice and Procedure § 3542, pages 347–48 (1975).

The basis of plaintiff's motion consists of allegations that this Court refuses to see fit to appoint counsel for prisoners in such suits as the instant action; that this Court believes prisoners "couldn't possible [sic] be right, because they'er [sic] convicts, and whatever may happen to them is alright ect [sic];" and that the plaintiff previously obtained a reversal of a decision entered by this Court in a separate action.

■ There is no constitutional right to appointed counsel in a civil case. *Thomas v. Pate,* 493 F.2d 151 (7th Cir.1974), *cert. den.,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). The decision whether to appoint counsel in a civil rights action rests within the sound discretion of the trial court. *McBride v. Soos,* 594 F.2d 610 (7th Cir.1979). The criteria for determining whether to appoint counsel include, but are not limited to, such factors as the legal and factual merits of the claim presented, the complexity of the issues, and any physical or mental impairments of the plaintiff. *McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982); *Caruth v. Pinkney,* 683 F.2d 1044 (7th Cir.1982); *Maclin v. Freake,* 650 F.2d 885 (7th Cir. 1981). Further, the fact that plaintiff has litigated matters in the past before this Court fails to meet the standards for a showing of bias or prejudice as set forth above. This Court has handled and continues to handle hundreds of prisoner actions filed under 42 U.S.C. § 1983, as well as petitions for writ of habeas corpus, 28 U.S.C. § 2254, and motions to vacate sentence under 28 U.S.C. § 2255. Nationally, the decade of 1970 to 1979 witnessed a 451.5% increase in the filings of state prisoner civil rights cases, from less than 3000 in 1970 to more than 11,000 in 1979, with no sign of a reversal of that trend. Annual Report of the Director of the Administra-

tive Office of the United States Courts (1979). To require a change of judge because of a prisoner's allegation of judicial bias, based on nothing more than the fact that the inmate has litigated matters in the past before the same judge, would quickly wreak havoc in the federal judiciary's handling of prisoner cases.

Therefore, based on a careful weighing of the above law and considerations, plaintiff's Motion for Change of Judge is DENIED. SO ORDERED.