The DUPLAN CORPORATION et al., Appellees,

v.

DEERING MILLIKEN RESEARCH CORPORATION, Appellant,

and

Deering Milliken, Inc., et al., Defendants.

No. 75–1073.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1975.

Decided July 10, 1975.

Jay Greenfield, New York City (Simon H. Rifkind, Jay N. Topkis, Cameron Clark, Burns, McDonald, Bradford, Erwin & Few, Greenwood, S. C., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Butler, Means, Evins & Browne, Spartanburg, S. C., Morgan, Finnegan, Durham & Pine, New York City, on brief), for appellant.

William K. West, Jr., Washington, D. C. (Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., David Rabin, Greensboro, N. C., Perrin, Perrin & Mann, Spartanburg, S. C., Cushman, Darby & Cushman, Washington, D. C., Leatherwood, Walker, Todd & Mann, Greenville, S. C., Willkie, Farr & Gallagher, New York City, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

This multidistrict case is a consolidation of 37 separate actions brought by appellant Deering Milliken Research Corporation (DMRC), the exclusive use-licensee under twenty-two patents, against seventeen former nonexclusive use-sublicensees for infringement of those patents. The sublicensees deny the allegations of infringement and have counterclaimed for declaratory relief and damages pursuant to the antitrust laws. The sole question involved in this appeal is whether the district court acted properly in holding that DMRC's status as an exclusive use-licensee did not convey standing upon it to prosecute an infringement suit as a co-plaintiff with the patent owner.

Chavanoz, a French corporation, holds numerous patents for certain "false twist" machines used to produce texturized yarn. The rights to manufacture and sell machinery incorporating those patents in the United States were granted to Ateliers Roannais de Constructions Textiles (ARCT). The exclusive right to use and to sublicense others to use the patented machinery in the United States was granted to appellant DMRC. Under the arrangement among Chavanoz, ARCT, and DMRC, any company wishing to utilize Chavanoz's patented method for producing texturized yarn in the United States would be required to enter into a royalty agreement for use of the patented devices with DMRC before it could purchase the machinery incorporating the patented devices to produce the yarn from ARCT. Chavanoz would receive a portion of all payments received by DMRC and ARCT by virtue of such transactions.

The appellees herein, former use-sublicensees of DMRC, collectively referred to by the district court and in this opinion as "throwsters," have refused to continue to make royalty payments to DMRC although they continue to produce yarn by the allegedly patented process, with machinery manufactured by ARCT. They contend that the requirement that they pay a royalty to DMRC for the use of equipment purchased from ARCT is invalid. They further argue that the machinery purchased from ARCT does not contain any device which is validly patented and to which DMRC's exclusive use-license would apply. Appellee throwsters seek a declaratory judgment

against Chavanoz and others [1] declaring that certain of the patents held by Chavanoz and licensed to DMRC are invalid. The throwsters also counterclaim for damages allegedly arising from violations of the Sherman Act by Chavanoz, DMRC and others.

The throwsters moved for dismissal of the patent infringement claims filed by DMRC, claiming that DMRC, as an exclusive licensee of only the right to use the patents, did not have standing to sue for infringement in its own name. The district court, in a well-reasoned opinion, granted appellees' motion to dismiss the claims of infringement by DMRC.[2] However, rather than dismissing the principal action, the court granted leave

for Chavanoz to undertake prosecution of the infringement in its own name by adopting the pleadings previously filed by DMRC.[3]

Chavanoz accepted the district court's offer and has vigorously prosecuted this action in its own name with the assistance of DMRC. Subsequently, DMRC filed a motion with the district court seeking leave to participate in the action as a co-plaintiff with Chavanoz. The district court denied DMRC's motion that it be allowed to participate in the infringement action as a co-plaintiff. The district court held that an exclusive licensee of less than all the rights under a patent could not participate in a suit for infringement either alone or as a co-plaintiff with the patent owner.[4]

1. The status of DMRC with respect to the appellee throwsters' counter suit seeking a declaratory judgment that certain of the patents claimed by Chavanoz and licensed to DMRC are invalid and unenforceable is not free of ambiguity. The district court's order of September 30, 1974, which dismissed DMRC as a party plaintiff to the principal action noted that the throwsters had filed a counter suit for a declaratory judgment against Chavanoz "and other parties." DMRC subsequently moved to amend that order to allow it to continue in the principal action as a co-plaintiff with Chavanoz and to clearly reflect that DMRC is one of the "other parties" designated as defendants in the counter suit. Although the district court in its order of November 27, 1974, did deny DMRC leave to proceed as a co-plaintiff in this action, it did not specifically address the further motion that DMRC be specifically designated as a defendant in the declaratory judgment action. The court did, however, make the following observation in that order:

This determination also has no effect whatever on the throwsters' suit brought against the patent owner Chavanoz, for a declaratory judgment of invalidity, noninfringement, and unenforceability of the patents in suit. DMRC is not a co-defendant on this aspect of the case.

Whether DMRC was ever a defendant in the counter suit filed by the throwsters and, if so, whether that passage was intended to act as a dismissal of DMRC as a defendant is not clear on the record. We intimate no opinion on this matter.

2. In dismissing DMRC as a plaintiff in this action the district court offered the following observations:

Because DMRC is not the patent *owner* it has no standing, alone, to seek relief for in-

fringement as contemplated by 35 U.S.C. § 281. Chavanoz, as owner, is an indispensable party to any suit claiming an infringement, the reason being the desire of the courts to have all possible claims of infringement litigated in one action. *Etherington v. Hardee,* 290 F.2d 28 (5th Cir. 1961); *Switzer Bros., Inc. v. Chicago Cardboard Co.,* 252 F.2d 407 (7th Cir. 1958); *Industrial Synthetics Corp. v. Swan Rubber Co.,* 234 F.2d 819 (5th Cir. 1956); *Hycon Mfg. Co. v. H. Koch & Sons,* 219 F.2d 353 (9th Cir. 1955); *Union Trust National Bank v. Audio Devices, Inc.,* 295 F.Supp. 25 (S.D.N.Y.1969). Any claim DMRC has against a throwster in this case, arising out of any patent in this case, is dismissed with prejudice.

3. Under the licensing agreement between Chavanoz and DMRC, if a suit became necessary to protect the patents from infringement, each party agreed that the other was free to prosecute the suit in the name of either or both of them.

4. The following passages from the district court's order of November 27, 1974, reflect the basis for its reluctant conclusion that DMRC could not participate as a co-plaintiff in prosecuting the infringement claims.

Although upon reflection of the practicalities involved, it appears just that an exclusive use-licensee should be allowed to join as a co-plaintiff with the patent owner in asserting claims for infringement of the use-rights, this court finds that it is without power to do so after interpreting the applicable statutes, 35 U.S.C. § 100(d), § 154, and § 281, and after re-examining the pertinent judicial decisions, *Waterman v. Mackenzie,* 29 F. 316 (C.C.S.D.N.Y.1886) (complainant, exclusive licensee of rights to make and sell

DMRC was granted permission to "aid and assist Chavanoz in the prosecution of its infringement claims as an interested party, like any employee may help an employer, but not as a sole plaintiff or as co-plaintiff." DMRC brings this appeal from the orders of the district court granting partial summary judgment against DMRC upon the patent infringement claim and denying permission for it to participate in this litigation as a co-plaintiff with Chavanoz.

Since the patent owner, Chavanoz, is now a plaintiff in the principal action, which was originally brought by DMRC, alleging patent infringement by the throwsters, it is unnecessary for us to decide whether DMRC could have prosecuted such an action alone and in its own name had Chavanoz failed to join in the suit. The sole question before us is whether the rights of DMRC as an exclusive use-licensee under patents owned by Chavanoz give it standing to act as a co-plaintiff with Chavanoz in prosecuting a patent infringement suit against those who allegedly infringed upon the exclusive use-license. We hold that DMRC does have standing to sue jointly with Chavanoz with respect to the patent infringement claim.

The district court appears to have partially based its conclusion that DMRC could not become a co-plaintiff in this action upon two cases which presented the question whether a licensee of less than all the rights secured by a patent could prosecute an infringement claim without the participation of the patentee.[5] We have carefully examined those cases and conclude that the reasons cited by those courts for denying standing to a licensee of less than all the rights secured by a patent to prosecute an infringement suit *alone* and *in its own name* do not, by analogy, compel the conclusion that such a licensee may not participate in an infringement suit as a co-plaintiff.

First, we turn to the Supreme Court's opinion in *Independent Wireless Telegraph Co. v. Radio Corporation of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), which considered the remedies available to an exclusive licensee of less than all the rights secured by a patent (a "limited exclusive licensee") against one who infringes upon those exclusive rights. The Court held that the limited exclusive licensee could "join" the patent owner as an involuntary plaintiff in an infringement action.

but not to use, cannot sue alone for infringement because it did not have title), affirmed, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891) (exclusive licensee of all rights may force patent owner to join involuntarily in action for infringement); *Independent Wireless Telegraph Co. v. Radio Corporation of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926) (only patent owner and/or exclusive licensee may sue for infringement), modified, 270 U.S. 84, 46 S.Ct. 224, 70 L.Ed. 481 (accused infringer may contest in trial court whether plaintiff is exclusive licensee of all rights or only mere licensee); *Innis, Speiden & Co. v. Food Machinery Corp.,* 2 F.R.D. 261 (D.Del.1942) (per District Judge, later Chief Third Circuit Judge, Biggs) (exclusive licensee of all rights allowed to intervene as co-plaintiff with patent [owner] in infringement suit); and *Holliday v. Long Mfg. Co.,* 18 F.R.D. 45 (E.D.N.C.1955) (per District Judge Gilliam) (exclusive licensee of all rights given 30 days to join in infringement suit brought by patent owner). Any change in the law is a matter for Congress and not for the courts.

Thus, this court, as in its order of September 30, 1974, comes to the inescapable conclusion that DMRC, the exclusive licensee of less than all rights under the patent, has no right to sue the throwsters for infringement, either alone or as a co-plaintiff with the patent owner. An exclusive use-licensee [sic] gives one only the right to sublicense the use-rights. An exclusive use-licensee does not obtain the right to exclude others from using the patented invention. Such a right remains vested in the patent owner. The right to exclude constitutes the sole power to sue for infringement. (Footnote omitted.)

5. *Independent Wireless Telegraph Co. v. Radio Corporation of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926); modified, 270 U.S. 84, 46 S.Ct. 224, 70 L.Ed. 481; *Waterman v. Mackenzie,* 29 F. 316 (C.C.S.D.N.Y.1886), affirmed, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891).

Having decided that the suit could proceed in that manner, the Court declined to address the further question which was whether the limited exclusive licensee could have proceeded against the alleged infringer in his own name without joining the patent owner. The district court in the case now before us appears to have adopted the interpretation of that case offered by the throwsters: that the word "join" in that context does not refer to a joint right to sue as co-plaintiffs but merely means that such a licensee may "bring in" the patent owner involuntarily and prosecute the suit in its name alone. From that analysis the district court appears to have concluded that the limited exclusive licensee had no right of action against the infringer and could not, therefore, participate as a party to an infringement action.

Our consideration of *Independent Wireless* has led us to a different conclusion. Although the word "join" would, in some contexts, have the meaning ascribed to it by the throwsters, we believe the Court made clear its intent that the parties be joined as co-plaintiffs.[6] We find recognition in that case of the right of an exclusive licensee of less than all the rights secured by a patent to join as a co-plaintiff with the patent owner to prosecute actions for infringement of those exclusive rights.

The necessity for joining the patent owner in that case was not predicated upon the limited exclusive licensee's lack of a proper cause of action against the alleged infringer, but, rather, upon the necessity for joining the patent owner to establish federal jurisdiction. The Court noted that an action by an exclusive licensee of less than all the rights secured by a patent would be "an action in equity based on the contract rights of the licensee under the license and a stranger's violation of them," and, as such, would not, properly speaking, be an action brought under the patent laws for purposes of invoking federal jurisdiction over the cause of action. 269 U.S. at 466–467, 46 S.Ct. at 168. Hence, the Court concluded that in the absence of the patent owner as a party to the action "[t]here would be no jurisdiction in courts of the United States to entertain it, unless by reason of diverse citizenship of the parties . . . ." 269 U.S. at 467, 46 S.Ct. at 169. Where, as in the instant case, the patent owner is a party plaintiff, thereby invoking federal jurisdiction, we see no reason to exclude an exclusive licensee of such patent owner who has alleged a substantial interest in the rights allegedly infringed from participation as a co-plaintiff. This is especially true in the instant case since the limited exclusive licensee has alleged diversity as an independent basis for federal jurisdiction over its cause of action.

Next, we consider *Waterman v. Mackenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). There, an action for infringement was commenced by the owner of a patent who had previously mortgaged the patent to another. The Court held that the owner (mortgagor) of a patent could not maintain an action for infringement once the patent was mortgaged because the mortgagee "was the person, and the only person, entitled to maintain [the action]." 138 U.S. at 261, 11 S.Ct. at 337. In a most significant passage, at least for our purposes, the Court declined to consider whether the mortgagor could join in a suit brought by the mortgagee under similar circumstances "for the purpose of preventing multiplicity of suits or miscarriage of justice." 138 U.S. 261, 11 S.Ct. 337. *Waterman* appears to recognize that the crucial question is whether a party who seeks to intervene in a patent infringement suit has a sufficient, legally recognized interest in the rights secured by the patent to warrant participation. As

---

6. In the concluding paragraph of its opinion in *Independent Wireless* the Supreme Court summarized its opinion as follows:

We hold that the De Forest Company [patent owner] was properly joined as a co-plaintiff by the Radio Corporation [limited exclusive licensee] upon the 25th averment of the bill. . . .

269 U.S. at 475, 46 S.Ct. at 172.

an exclusive licensee of the use rights under the patent it would seem to us that DMRC is the party directly injured by the alleged infringement of that right by the throwsters. It must be afforded an opportunity to protect its interest in the rights secured under the patent to prevent a "miscarriage of justice." To consolidate the claims of Chavanoz, the patent owner, and DMRC, the exclusive use-licensee, in a single suit is appropriate to prevent the possibility of a "multiplicity of suits."

The two additional cases [7] cited by the district court as authority for its conclusion that the exclusive use-licensee is not a proper co-plaintiff in this action are equally unpersuasive. An examination of those cases reveals that in each an exclusive licensee of less than all the rights secured by a patent was permitted to maintain an action as a co-plaintiff with the patent owner against an alleged infringer. While the throwsters are correct in pointing out that the participation of the licensees in those cases was predicated upon the particular facts involved, we find those facts sufficiently analogous to those in the instant case to warrant similar participation by DMRC as a co-plaintiff.

The district court characterized the holding in *Innis, Speiden & Co. v. Food Machinery Corporation,* 2 F.R.D. 261 (D.Del.1942), as follows: "exclusive licensee of all rights allowed to intervene as co-plaintiff with patent [owner] in infringement suit." A close examination of the facts of that case, however, reveals that the licensee had received only the exclusive rights "to supply, distribute and sell" but not to manufacture or use the patented solution in question. The licensee did not hold an exclusive license to all rights secured by the patent. Nevertheless, the holder of this limited exclusive license was allowed to intervene as a co-plaintiff in the infringement suit since it was alleged that "the

defendant has directly invaded the precise portion of the patent right under which the licensee claims." 2 F.R.D. at 265.

The district court in *Innis, Speiden & Co., supra,* noted that "most of the questions of fact and law presented by the plaintiffs' [patent owners'] and applicant's [limited exclusive licensee's] claims will have questions of fact and law in common." 2 F.R.D. at 265. In allowing the limited exclusive licensee to participate as a co-plaintiff in the infringement action the court observed that "the weight of authority does permit the joinder of a holder of a patent in a suit by the licensee to restrain infringement, though the rights given to the licensee were less than the complete bundle of rights included within the patent monopoly." 2 F.R.D. at 263–264. The factual setting of that case and the reasons advanced in support of permitting participation by the limited exclusive licensee as a co-plaintiff are analogous to the facts and reasons presented in the instant case. We find that *Innis, Speiden & Co., supra,* presents cogent arguments for the principles advanced by DMRC in support of its motion for permission to participate as a co-plaintiff.

The district court also relied upon *Holliday v. Long Manufacturing Co.,* 18 F.R.D. 45 (E.D.N.C.1955), which it described as holding that an "exclusive licensee of all rights given 30 days to join in infringement suit brought by patent owner." We have examined that case and find that the exclusive licensee discussed therein held only the "exclusive rights to manufacture and sell" but not to use. 18 F.R.D. at 46–47. The court held that, although an exclusive licensee of less than all the rights secured by a patent is not an indispensable party to an infringement action brought by the patent owner, such a licensee is appropriately summoned by the court to appear in the action pursuant to Rule 19(b), Federal Rules of Civil Procedure.[8]

---

7. *Innis, Speiden & Co. v. Food Machinery Corp.,* 2 F.R.D. 261 (D.Del.1942); *Holliday v. Long Manufacturing Co.,* 18 F.R.D. 45 (E.D.N.C.1955).

8. Rule 19 was revised in 1966 so that it no longer contains the language set forth in *Holliday* as a basis for an involuntary joinder. As to the effect of the amendment upon such

Among the reasons for joining the limited exclusive licensee as a co-plaintiff with the patent owner in that action was the fact that the "exclusive licensee has an interest in the outcome of the litigation and should be joined in order to bring all proper parties before the Court." 18 F.R.D. at 49. The court also noted that failure to join the limited exclusive licensee as a co-plaintiff might result in multiple suits against the alleged infringer based upon the same infringement.[9] We find support in that case for the joinder urged by DMRC in the instant case.

There is an additional and even more compelling reason for permitting the exclusive use-licensee, DMRC, to participate as a co-plaintiff in this suit. If the exclusive use-licensee is denied that permission any award of damages might be limited to that portion of the use royalty which would accrue to the patent owner alone.[10] See Cold Metal Process Co. v. E. W. Bliss Co., 285 F.2d 231, 240–242 (6 Cir. 1960); Bakelite Corp. v. Lubri-Zol Development Corp., 34 F.Supp. 142, 144 (D.Del.1940). At least one court appears to have expressed doubt that a limited exclusive licensee could maintain a second action against the alleged infringer to recover its portion of the royalty. Holliday v. Long Manufacturing Co., supra, 18 F.R.D. at 49.[11]

Under these circumstances, we conclude that DMRC should be permitted to participate as a co-plaintiff with Chavanoz to protect its portion of the royalty for use of the patented machinery upon the principle that "[a]ny rights of the licensee[12] must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee

cases see Catanzaro v. International Telephone and Telegraph Corp., 378 F.Supp. 203 (D.C. Del.1974). Since we are not confronted in this case with a request for an involuntary joinder we do not rely upon that Rule as a basis for our decision.

9. Although the court in Holliday pointed to the possibility of multiple suits against an alleged infringer, it also questioned whether such suits would be permissible. See note 11, infra. It was the possibility of such subsequent litigation and the likelihood that joinder of the limited exclusive licensee as a co-plaintiff would eliminate any possibility of such subsequent litigation that contributed to its action in joining the patent owner and the limited exclusive licensee as co-plaintiffs.

10. If the patent owner proceeding alone against the infringer were to recover the entire amount of royalty owed by the infringer, then a second suit by the exclusive use-licensee against the patent owner to recover that portion of the royalty due it under the licensing agreement would appear to be appropriate. To allow the exclusive use-licensee to join in this action would eliminate the possibility of such multiple litigation. See also note 9, supra.

11. If suit is brought by the exclusive licensee in the name of the patentee, or by the patentee with the exclusive licensee's consent and concurrence, the exclusive licensee is in effect a party, and the Supreme Court has expressed doubt that after judgment he would be permitted to bring a new suit against the same defendant for the same infringement. Birdsell v. Shaliol, 112 U.S. 485, 487, 5 S.Ct. 244, 28 L.Ed. 768.

Holliday v. Long Manufacturing Co., 18 F.R.D. 45, at 49 (E.D.N.C.1955). As previously noted, the "exclusive licensee" referred to by the district court in Holliday was an exclusive licensee of less than all the rights secured by the patent—i.e., a "limited exclusive licensee."

While we intimate no opinion upon the correctness of the district court's observation in Holliday on that issue, there is a second reason for questioning whether the exclusive use-licensee, DMRC, could successfully maintain a subsequent action against the alleged infringer if the patent owner is successful but fails to collect the full royalty due to both itself and DMRC. The district court has previously ruled that the exclusive use-licensee, DMRC, cannot prosecute a patent infringement claim alone and in its own name against the defendants, throwsters. See note 2, supra. While that question is not before us for review, we have previously herein acknowledged the sound reasoning offered by the district court in support of that ruling. If correct, that ruling would operate as a substantial bar to any subsequent action against the alleged infringers by DMRC to recover any portion of the royalty not recoverable in this action by Chavanoz.

12. The Supreme Court's opinion in Waterman clearly establishes that when it used the term "licensee" in this context it referred to one who was an exclusive licensee of less than all rights secured by the patent. 138 U.S. at 255, 11 S.Ct. 334.

with him as a plaintiff." *Waterman v. Mackenzie, supra,* 138 U.S. at 255, 11 S.Ct. at 335 (emphasis added). DMRC has shown that joinder of it as a co-plaintiff in the infringement action is necessary to protect the rights of all parties, to avoid the possibility of multiple suits upon a single cause of action, and to bring before the court all parties essential to resolution of the underlying dispute. Accordingly, the judgment of the district court is reversed.

*Reversed.*